By the Court. Campbell, J.
Without going into details in reference to the interest of John S. Provoost in the estate of his father, we entertain no doubt that he had such an interest as could be sold, assigned or mortgaged. He will be entitled to his share of the proceeds of the real estate, at all events, on the death of his sister, and there is nothing in the will of his father which prevents him from making such disposition of that interest as he pleases.
The objection is not well taken by the defendants that they have fully administered, as the decree would only affect assets which may hereafter come into their hands.
The fact, however, which is set up in the answer of the executors, and which must be taken as true, that Mrs. Provoost executed this joint bond as a surety for her son, must control the question of their liability as executors under any circumstances affecting the present condition of the estate. As against her separate estate, the bond is not good, either in law or in equity. In all the eases where courts of equity have interfered and decreed against the representatives of a deceased joint obligor, there was a legal or equitable claim against such deceased obligor at the time of his entering into the joint obligation. It was thus in the case of Simpson v. Vaughan, (2 Atk. 30,) and in Thomas v. Frazer, (3 Ves., jun., 399.) In the former of these cases, the doctrine is first laid down by Lord Hardwiclte, and for more than a century it has continued to be the rule of the English court of chancery, and it has been adopted with scarcely an exception by American courts of equity. In the great ease of Devaynes v. Noble and others, (1 Merivale, 563,) Sir William Grant discusses this doctrine with signal ability, and he re-affirms it in the case of Sumner v. Powell, (2 Merivale, 36.) In the latter case, he says, “ The *539 question is, whether any other effect can he given to this covenant in equity than it has at law. It has never been determined that every joint covenant is in equity to be considered as the several covenant of each of the covenanters. When the obligation exists only by virtue of the covenant, its extent can be measured only by the words in which it is conceived. A partnership debt has been treated in equity as the several debt of each partner, though at law it is only the joint debt of all. But these all have had a benefit from the money advanced or the credit given, and the obligation to pay exists independently of any instrument by which the debt may have been secured. So where a joint bond has in equity been considered as several, there has been a credit previously given to the different persons who have entered into the obligation. It was not the bond that created the liability to pay.” And in the case of Hunt v. Rousmanier, (8 Wheaton, 174,) Chief Justice Marshall says: “ That the courts are uniform in presuming a mistake in point of fact, in every case where a joint obligation has been given and a benefit has been received by the deceased obligor; that no proof of actual mistake is required, and the existence of an antecedent equity is sufficient;” and he adds, “ In cases attended by precisely the same circumstances so far as respects mistake, relief will be given against the representatives of a deceased obligor who had received the benefit of the obligation, and refused against the representatives of him who had not received it.” The doctrine is thus summed up by Jewett, Justice, in the recent case of Bradley v. Burwell, (3 Denio, 65.) “It is a general principle, that in case of a joint bond or obligation, if one of the obligors diés, his representatives are at law discharged from liability to the obligees, and the survivor alone can be sued. But in equity, the representatives of such deceased obligor are liable, unless the deceased was a mere surety; in such case, even equity will not extend by implication the responsibility from that of a joint to a joint and several undertaking.”
The answer of the executors alleges, that the bond and mortgage were given in this case to secure money borrowed by John S. Provoost, and his mother executed them as his surety. The representatives of her estate should not, therefore, have been *540 made parties to this bill. A decree may be taken for the sale of John S. Provoost’s interest in the real estate described in the mortgage, and charging him personally for any deficiency. The bill must be dismissed as to the executors of Mrs. Provoost, with costs up to the time of their motion for the revival of the suit, to be paid out of the estate of Carpenter in the hands of his executrix.