Renshaw vs. His Creditors.

## No. 10.034.

## James A. Renshaw vs. His Creditors.

Powers of attorney to sell and transfer the property pledged, given by the pledgor to the pledgee, as an adjunct to the contract of pledge itself, are not revoked by the insolvency of the pledgee or other causes stated in C. C. Art 3027.

The Art. 3027 is derived from the Code Napoleon and expresses a general principle of universal jurisprudence on the law of mandate, and the construction has been uniform under all systems that it did not apply to powers coupled with an interest in which the mandatary was made a *procurator in rem suam*.

The amendment of the article by Act No. 19 of 1882 is considered and construed as not inconsistent with the foregoing principles or preventing their continued application.

The right of retaining possession of the thing pledged until payment of his debt, conferred on the pledgee by Art. 3164 C.C. is an essential constituent of the *juspignoris* and not affected by the cession of the pledgor. The syndic may, on proper showing or proper proceeding, compel the liquidation of the pledge by sale so as to ascertain any possible *residuum* applicable to other creditors; but he does not acquire the right to de-mand the surrender of the pledged property into his official control and administration and subject to the costs and charges thereof.

APPEAL from the Civil District Court for the Parish of Orleans ; *Tissot*, J.

---

*A. J. & Omer Villeré.* for the syndic, Plaintiff and Appellant.

1. Powers of attorney, to transfer stocks on the books of corporations, expire by the fail-ure of the principal. Act 19 of 1882.
2. The syndic of an insolvent has the exclusive right to administer upon the property sur-rendered and to sell the same subject to the claims of privileged creditors. 34 A. 389; 31 A. 868; 1 N.S.417; 2 N. S. 22; R. S. 1813; C. C. 3166; 31 A. 870; 14 A. 560.

*Henry Denis,* for the Hope Insurance Company, Defendant and Ap-pellee :

A pledgee, under ordinary circumstances, cannot be compelled by the syndic of the insol-vent debtor to surrender the pledge to him. Jacquet vs. Creditors, 38 Ann. 863.
A power of attorney, coupled with an interest, is not revoked by the insolvency of the prin-cipal. Jacquet vs. Creditors, 38 Ann. 863; Allen, Bush & West vs. Nettles, Adm., 39 Ann. 791.

| 40 | 37 |
|----|-----|
| 46 | 1065 |
| 40 | 37' |
| 52 | 1618 |
| 40 | 37' |
| 117 | 413 |
| 40 | 37 |
| 122 | 82 |
| 40 | 37 |
| 123 | 324 |

Act No. 19 of 1882, embodying Article 3027 of the Civil Code, does not affect the rule that a power of attorney, coupled with an interest, is not revoked by the insolvency or death of the principal.

The pledge and power of attorney of this Appellee being anterior to the Act of 1882, could not, in any case, be impaired by it.

*Leovy & Blair,* for the Sun Mutual Insurance Company, Defendant and Appellee:

"If, among the assets of the insolvent, there be a thing pledged, the possession of it does not pass to the creditors, being vested in the pledgee. No man can transfer a greater right than he himself has." Jacquet vs. His Creditors, 38 Ann. 864.

"The obligation of pledge is contractual. It vests in the creditor the right of possession and of privilege on the thing pledged. The right of detention being as much a part of the security as the thing pledged are a part of the guaranty, the creditor cannot be deprived of same by the voluntary act (bankruptcy) of his debtor, nor by the insolvent laws of the State. The obligations of contracts cannot be impaired. Id.

"Notwithstanding the pledgor's insolvency, the pledgee can proceed to sell the pledge in the way stipulated by the contract." Id.

"A power of attorney, coupled with an interest, is not revoked by the death or bankruptcy of the principal. Article 3027 of the Civil Code applies to a gratuitous mandate." Id.

Act No. 19 of 1882 does not affect the above stated rights of a pledgee under a contract of pledge conferring the right to sell.

For, 1. It is simply an amendment of Article 3027, C. C., which this Court, in the case of Jacquet vs. His Creditors, held to apply only to gratuitous mandates.

2. It does not expressly repeal prior laws which gave to the pledgee of any kind of property, including shares of stock, the right to sell according to the stipulation of the contract, notwithstanding the insolvency of the pledgor. It does not repeal these laws by implication, for the continued existence of the mandate to transfer shares of stock is not at all incompatible or inconsistent with the continued existence of the power to retain and sell pledged stock after the failure of the pledgor.

3. It is not reasonable to presume that the Legislature intended to put pledgees of shares of stock *in duriori casu* than pledgees of all other kinds of property, especially when this particular species of property is, by reason of its negotiable character, the most usual form of security, and the necessities and conveniences of commerce require that the power to realize on such collaterals should be as free and untrammeled as possible.

4. In this case the pledgee's right to retain and sell the pledged stock does not depend upon the power to transfer stock. It is conferred by the contract of pledge. The separate power to transfer given by the pledgor is not necessary to the existence or exercise of the right to retain or sell, stipulated in the contract of pledge.

---

The opinion of the Court was delivered by

FENNER, J. This is a proceeding by the syndic in this insolvency to compel the Sun Mutual Insurance Company and the Hope Insurance Company to surrender to him certain shares of stock in various corporations which belonged to the insolvent, and had been pledged to said companies before his cession to secure certain debts due by him to them.

The validity of neither the debts nor the pledges is assailed by the

---

syndic, nor is it even pretended that the value of the securities exceeds the debts for which they are pledged.

The simple contention is that, by virtue of the cession, the syndic is entitled to take the pledged property from the possession of the pledgees and to administer and dispose of the same and to distribute the proceeds according to law.

It appears that at the time of the pledges, the insolvent executed powers of attorney in favor of the pledgees, authorizing them, in case of the non-payment of the debts at maturity, to sell the pledged stocks at public or private sale, and to make all necessary transfers thereof.

The syndic bases his proceeding upon the claim that under act 19 of 1882, amending article 3027 Rev. C. C., the powers of attorney to transfer the said stocks are revoked.

The article, as amended, reads as follows :

C. C. 3027, " The procuration expires :

" ......................................................................................

" ......................................................................................

" ......................................................................................

" By the death, seclusion, interdiction or FAILURE of the agent or " principal."

" *But powers of attorney by public act or by writings under private* " *signature, or by letter to transfer on the books of stock corporations,* " *bonds or shares of stock in said corporations, shall be irrevocable, and* " *shall not expire by the death, seclusion, interdiction or failure of the* " *principal,* WHERE THE SAID BONDS OR SHARES OF STOCK HAVE BEEN " PREVIOUSLY SOLD TO THE PERSONS HOLDING THE SAID POWERS OF " ATTORNEY, FOR VALUE RECEIVED AND SAID FACTS ARE SET FORTH IN " SUCH POWERS OF ATTORNEY."

From this last clause the syndic infers that, on the principle *inclusio unius exclusio alterius,* powers of attorney to transfer shares of stock which have not been "previously sold to the persons holding the powers," are revocable, and expire on the cession of the principal.

The principle invoked, if applied, would go much further, and would involve the revocation of all other powers of attorney whatever by the causes stated save the single exception mentioned.

In a recent case we held that art. 3027 only applied to gratuitous mandates, and not to mandates coupled with an interest like the mandate to sell given to the pledgee as a condition and integral part of the contract of pledge itself.   Jacquet vs. Creditors, 38 Ann. 864.

In that case, however, our attention was not called to the act of 1882,

and we must admit that, lurking in the statutes of that year, it escaped our notice. After due consideration of the amendment, however, we are inclined to adhere to the opinion in the Jacquet case.

The article 3027, as it stood before the amendment, was copied from article 2003 of the Code Napoleon, and was a principle equally of the Roman law and of universal jurisprudence. It has been universally held that it did not apply to what, at common law, are known as " powers coupled with an interest" corresponding to those which, in the terminology of the Roman law, made the mandatary a *"procurator in rem suam."* Hunt vs. Rousmanier, 8 Wheat. 174; Story on Agency, §§ 164, 173, 477, 483, 489; Livermore on Agency, § 30; 3 Zachariæ, p. 134; 18 Duranton, No. 284; Troplong, Mandat, No. 728, 737.

Thus the French Court of Cassation held that a mandate conferred in the interest of the agent as well as of the principal, and as a condition of a contract passed between them, is essentially irrevocable, and is not revoked by the failure of the principal. Journal du Palais, 12 and 19 August, 1831.

The same principle applies in every case where the mandate is granted as a condition of the contract, or as a means of executing it. In such case the mandate, forming an element of a synallagmatic contract, is impressed with the qualities of such a contract, and is irrevocable. 2 Delamarre & LePoitvin, No. 445; Troplong No. 737; Journal du Palais, 7 July 1837.

The principle is so just and conservative and so essential in the business transactions of life, that it is impossible to believe that the Legislature intended to abolish it or to confine its application to a single case.

The principle *inclusio unius exclusio alterius*, is, after all, only one of many rules of interpretation, not intrinsically obligatory, but only serving as aids in arriving at the legislative will.

We consider that as art. 3027 stood, prior to the amendment of 1882, jurisprudence exempted such mandates as we have just referred to as conclusively as if the exception had been written in the statute. The question is whether the Legislature intended to alter or repeal this exception. The statute does not express such intention, and we are only asked to infer it by implication under a particular rule of statutory construction. But this rule clashes, in this case, with another of equal force, viz: That which reprobates the constructive repeal of laws by implication in any case except where the new statute and the old are so inconsistent that they cannot stand together. N. O. & Carrollton R. R. vs. City, 34 Ann. 441.

No such inconsistency exists here.

We are satisfied that the Legislature only intended, out of excessive caution, to give the sanction of express law to the particular exemption from revocability mentioned in the amendment without interfering with any other exemptions which jurisprudence had always recognized.

It is plain that the powers of attorney here involved belong to the class which we have described, forming important adjuncts of the contracts of pledge themselves and stipulated in the interest of the manadataries; that the mandator had no power to revoke them, and hence they were equally irrevocable for the other causes mentioned in art. 3027.

We may add that, even if the powers of attorney were revoked, that would not deprive the pledgees of the protection accorded them by art. 3164 R. C. C., which declares: "The creditor who is in possession of the pledge, can only be compelled to return it, when he has received the whole payment of the principal as well as the interest and costs."

This right of retention is an essential constituent of the *jus pignoris*.

It has been held that this right is not operative, as against creditors of the pledgor, to prevent them from seizing and selling the pledged property so as to liquidate the debt and secure any possible surplus. Kirkpatrick vs. Oldham, 38 Ann. 553; Augé vs. Variol, 31 Ann. 868; Pickens vs. Webster, Id. 870; Case vs. Kleppenburg, 27 Ann. 484; Gleises vs. McHatton, 14 Ann. 560.

No doubt the syndic of an insolvent pledgor might, on proper showing, and by proper proceeding, force a similar liquidation so as to secure any possible *residuum* for the creditors, as was done by the decree of the court in the case of Brother vs. Saul, 11 Ann. 225.

But it is entirely inconsistent with the pledgee's right of retention, and has never been held in this State that, by mere virtue of the cession, the syndic acquires the right to demand the surrender of pledged property to be officially administered by him and subjected to the costs and burdens of such administration.

Judgment affirmed.