410 So.2d 1160 (1982)
J. Boring MONTGOMERY, M.D., Plaintiff-Appellant,
v.
Ronald J. FOREMAN, Executor of the Succession of J. Y. Foreman, Defendant-Appellee.
No. 8608.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
*1161 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Daniel G. Fournerat and Gordon T. Whitman, Lafayette, for plaintiff-appellant.
Hayes, Fazzio & Durio, Steven G. Durio, Lafayette, for defendant-appellee.
Before GUIDRY, SWIFT and STOKER, JJ.
STOKER, Judge.
This case presents two basic issues on appeal: (1) Whether the contract in question creates a mandate or agency "coupled with an interest" of the agent; and (2) if so, whether the contract remains valid after the death of the agent.
The facts in this case are easily stated. J. Boring Montgomery, M.D. (Montgomery), is one of several co-owners of certain tracts of land in Lafayette, Louisiana, who entered into an agreement with J. Y. Foreman (Foreman), realtor, for the commercial or residential development of the property. The agreement was entered into on March 27, 1973, and on March 1, 1979, Foreman died. Montgomery subsequently sought a declaratory judgment from the Fifteenth Judicial District Court in Lafayette to the effect that the contract became null and void with the death of Foreman. Ronald J. Foreman, executor of J. Y. Foreman's succession, filed a peremptory exception of no cause of action to Montgomery's petition for declaratory judgment. The district court sustained the exception of no cause of action and Montgomery has appealed the decision.
A copy of the contract between the owners of the property to be developed and Foreman (designated in the contract as "Agent") is appended to this opinion for ease of reference. The contract gave Foreman the power to develop the property as *1162 he saw fit (Paragraphs III, IV, and IX) and authorized him to sell the property for the owners (Paragraph VI). Foreman was obligated to pay the owners $40 per running foot for all lots sold. The balance Foreman received from the sale of any lot was his property. (Paragraph VI). The owners are responsible for any taxes owing on the properties (Paragraph VIII), but the agent bears the entire cost of developing the properties. (Paragraph IV, V, and IX).
Paragraph X of the contract provides that the property shall be listed exclusively with Foreman for 15 years from the date of the contract (March 27, 1973) with Foreman having an option to renew for an additional 10 years. The last sentence of Paragraph X states:
"The Owners hereby acknowledge that the consideration for this listing shall be payment of the improvements as well as the development cost of said property by the said Agent, in addition to other consideration hereinabove mentioned."
However, it is stated in Paragraph VI that any amount that Foreman receives above $40 per running foot is "the profit of the said Agent as his consideration hereunder." Thus, it is understood that Foreman is to recoup his expenditures for developing the property from the amount for which he sells the improved property.
Finally, the agreement is made "binding upon the successors and assigns of all parties," in Paragraph XIII.
Plaintiff Montgomery argues that the contract is one of mandate or agency and as such it expired with the death of the mandatary or agent. He cites LSA-C.C. art. 3027 for the general rule that a mandate is revoked by the death of the principal or agent. Plaintiff cites the cases of Marchand v. Gulf Refining Co. of Louisiana, 187 La. 1002, 175 So. 647 (La.1937); and Bryson v. United Gas Public Service Co., 169 So. 350 (La.App. 2nd Cir. 1936) for the proposition that a statement in a mandate that it is irrevocable has no effect unless the mandate is a power of attorney coupled with an interest. Plaintiff contends that the contract does not create a power coupled with an interest. Therefore, according to plaintiff, the contract expired with Foreman's death despite the language in Paragraph 10 making the agreement heritable.
The trial court found the agreement to be not one of mandate, but a bilateral contract instead. The court's reasons for judgment, found in a minute entry of March 9, 1981, are as follows:
"After reviewing the evidence contained in the record, the Court sustains defendant's exception of no cause of action as to plaintiff's petition for declaratory judgment. Plaintiff states in his petition that the contract between himself and J. Y. Foreman, which was made a part of the petition, is a contract of agency and, therefore, terminated upon the death of J. Y. Foreman. The Court finds no merit in the argument.
"The contract of mandate is an instrument which unilaterally delegates authority from the principal to the mandatary. The mandatary may act only within the restricted limits of the powers which are delegated to him. [LSA-C.C. art. 3027] provides that this type of contract terminates upon the death of the principal. The contract attached to the petition in no manner contains merely a unilateral delegation of authority. The contract is a contract of development of certain tracts of land and requires reciprocal duties on the part of the parties involved. It is apparent from Paragraph V of the agreement that Mr. Foreman was to bear all expenses of developing the property involved, including the costs of engineering, street improvements and ground levelling. The duties, which are clearly delineated in the contract, are bilateral duties, not merely a unilateral delegation of authority.
"The petition for declaratory judgment states no alternative basis on which judgment could be rendered. It merely asks that the contract be terminated as of March 1, 1979, the date of the "agent's" death. As previously stated, the Court finds no merit in plaintiff's averment that this is a contract of mandate and, *1163 therefore, sustains defendant's exception."
Despite the last sentence of the trial court's reasons which clearly states that the court finds no merit in plaintiff's averment that the contract is one of mandate, the defendant argues in his brief that the trial court found that the agreement was not "merely" an agency or mandate. Defendant contends that the contract creates an agency relationship, but it is not only a contract of agency. The defendant urges that the contract creates a mandate "for the joint interest of both parties" under LSA-C.C. art. 2986.
We agree with defendant that the contract in this case is one of mandate. The mandatary, Foreman, had practical or effective authority to sell the property owned by the principals, Montgomery, et al, in a representative capacity.[1] Under the contract between Foreman and the plaintiffs, Foreman was given complete authority to deal with the property. For example, Paragraph VI of the contract provides:
* * * * * *
"The Agent is expressly empowered to buy or sell any lot involved herein for such price and under such terms and conditions as the Agent may deem fit and proper; provided the said Owners are to be paid the price per running foot hereinabove established at the time of the sale of any lot involved herein."
* * * * * *
"The Owners expressly agree to sign and execute any act of sale or conveyance necessary to transfer any portion of the above-described property to the said Agent, or to such purchaser as the said Agent shall produce for the prices mentioned above."
While the plaintiffs were required to sign all contracts for development and sales of lots, the plaintiffs bound themselves to sign whatever contracts were negotiated by Foreman. See particularly Paragraphs IV and VI. Since the making of the contracts was entirely at Foreman's discretion and reflected his will only, the signing and execution of documents by plaintiffs was the performance of ministerial acts only. This provision not only applied to third parties but to instances in which Foreman decided to purchase any portion of the property. This provision granted Foreman a virtual option to purchase.
The agreement is probably also a mandate for the joint interest of both parties since both the mandatary and his principals contemplated a profit from the arrangement. However, this classification of the mandate under LSA-C.C. art. 2986 is not determinative of the issue of whether the mandate is heritable or whether it expires with the death of the mandatary.
The answer to this issue has been supplied jurisprudentially rather than in the Civil Code. The jurisprudence of Louisiana has adopted the common law principle that for a power of attorney to survive the death of the principal, it must be "coupled with an interest." Therefore, we must determine whether the contract before us creates a power of attorney coupled with an interest and, if so, whether such a contract can survive the death of the agent.

POWER COUPLED WITH AN INTEREST
A short history of the concept of "power coupled with an interest" may help in this determination. The principle that a contract of agency is irrevocable if the power of attorney created thereby is coupled with an interest of the agent entered American jurisprudence in the 1823 U. S. Supreme Court decision of Hunt v. Rousmanier's Administrators, 21 U.S. (8 Wheat.) 174, 5 L.Ed. 589 (U.S.1823). In that case, Chief Justice Marshall stated:
"We hold it to be clear that the interest which can protect a power after the death of the person who creates it, must *1164 be an interest in the thing itself. In other words, the power must be engrafted on the thing." 8 Wheat. 174, 204; 5 L.Ed. 589, 597.
The Louisiana Supreme Court in the 1888 case of Renshaw v. His Creditors, 40 La. Ann. 37, 3 So. 403 (1888), citing French authorities, specifically rejected the common law "powers coupled with an interest" as found in the Hunt case. The court in Renshaw did hold the mandate in question was irrevocable and stated:
"Thus, the French court of cassation held that a mandate conferred in the interest of the agent as well as of the principal, and as a condition of a contract passed between them, is essentially irrevocable, and is not revoked by the failure of the principle (sic). (Citations omitted) The same principle applies in every case where the mandate is granted as a condition of the contract, or as a means of executing it. In such case, the mandate, forming an element of a synallagmatic contract, is impressed with the qualities of such a contract, and is irrevocable." (Citations omitted.) 3 So. 403, 404-405.[2]
However, the Louisiana Supreme Court in Louque v. Dejan, 129 La. 519, 56 So. 427 (1911) cited the Hunt case among many other common law and civil law authorities to find that the contingency fee contract of an attorney at law does not constitute a power coupled with an interest in the cause of action. Therefore, the client could revoke the mandate at will.
In 1925, the Supreme Court in Fowler v. Phillips, 159 La. 668, 106 So. 26 (1925) found that the irrevocable power of attorney described in LSA-C.C. art. 3027 is essentially the same as the common law "power coupled with an interest". The court then adopted the definition of "power coupled with an interest" as found at 2 Corpus Juris 531, Verbo, "Agency" § 155, finding that the Louque decision had in effect approved this definition by citing Hunt. The Corpus Juris definition included a perhaps unnecessary inference of the holding in Hunt: that, to constitute a power coupled with an interest, the agent must be able to deal with the property which is the subject of the agency or power in his own name. The court in Fowler thus held that a mandate to sell realty in which the mandatary sells property in the owner's name for a commission is revocable at the owner's will.
The Second Circuit Court of Appeal in Bryson v. United Gas Public Service Co., supra, cited Fowler in finding that an agency in which the agent has no interest in the property other than his right to earn compensation or a commission is not coupled with an interest so as to be irrevocable. The court also based its holding on the fact that the agents in this case did not have the power to deal with the property in their own names.
*1165 This issue was again raised in Marchand v. Gulf Refining Co. of Louisiana, supra. In that case the Supreme Court quoted the Corpus Juris definition of "power coupled with an interest" from the Fowler decision, and based its holding that the mandate in that case was revocable on the finding that the interest of the agent was not an interest or title in the property itself. The court stated:
"... mandate may be revoked by will except where the mandate is coupled with an interest in the property itself and that interest must be such an interest that [the mandataries] could maintain this action in their own name." 175 So. 647, 650.
However, in the case of Eduardo Fernandez Y Compania v. Longino & Collins, 199 La. 343, 6 So.2d 137 (1942), the Louisiana Supreme Court found that an agent's security interest in the property over which he had control was an "agency coupled with an interest" which was not revocable at the mere will of the principal. In that case, a Tennessee resident had the right to sell amber for the account of a Honduras co-partnership. The Honduras co-partnership was indebted to the Tennessee resident for $5,000. The court found that the payment of this debt was secured by the amber or the proceeds from the sale of the amber belonging to the co-partnership. Therefore, the Tennessee resident had the power of agency coupled with an interest or estate in the amber to be disposed of or managed under the power. Thus, the agency was coupled with an interest in the thing which was the subject of the agency and was irrevocable.
The court in Eduardo Fernandez held that the agency was irrevocable despite the fact that the agent did not have the power to sell or otherwise dispose of the property subject to his agency in his own name. This holding is complicated by the fact that the court cites Louque v. Dejan, supra; Fowler v. Phillips, supra; Marchand v. Gulf Refining Co., supra; and Bryson v. United Gas Public Service Co., supra. All of these cases construe the case of Hunt v. Rousmanier's Administrators, supra, to require that an agent have the power to sell the property subject to the agency in his own name for the agency to be irrevocable. It is clear that the agent in Eduardo Fernandez did not have this power; yet the Court held the agency to be irrevocable.[3]
In the case of Robinson v. Hunt, 211 La. 1019, 31 So.2d 197 (1947) the Louisiana Supreme Court found that a mandate could not be dissolved at the will of the principal because the mandatary had an interest in the property subject to his mandate. In that case the court on rehearing reversed a judgment sustaining an exception of no cause of action, finding that an attorney-at-law who represented his clients in an adjudication over property, and who was assigned an interest in the mineral rights in that property, could not be dismissed by the clients without just cause.
More recently, the First Circuit found in Succession of Zatarain, 138 So.2d 163 (La. App. 1st Cir. 1962), that an attorney designated in a will to handle the testator's affairs had a right to perform the services and be paid therefore, but that the obligation was revoked by the attorney's death since he did not acquire the power to deal with the assets of the succession in his own name. The court invoked the Louisiana jurisprudence discussed above which required the agent to have the power to deal with the res in his own name for an agency to be irrevocable, and incorrectly cited the case of Renshaw v. His Creditors, supra, for this principle.[4]
*1166 Most recently, this court in two cases, Bown v. Holland, 392 So.2d 726 (La.App. 3rd Cir. 1980), and Landreneau v. Granger, 401 So.2d 634 (La.App. 3rd Cir. 1981), held that the exception to the general rule that mandates are revocable at the will of the principal is that when the mandatary acquires an interest in the property, such that he may deal with it in his own name, the mandate is irrevocable. The cases of Marchand v. Gulf Refining Co. of Louisiana, supra; Eduardo Fernandez Y Compania v. Longino and Collins, supra; Robinson v. Hunt, supra; Succession of Zatarain, supra, are cited for this principle. In the Bown case, we held that a man who contracted to recover mineral royalties for the defendants from their property interests for half of the royalties recovered did not acquire a power coupled with an interest rendering his mandate irrevocable. In the Landreneau case a power of attorney which empowered the mandataries to manage the principal's properties and which contained a paragraph purporting to render the mandate irrevocable was found to be a simple mandate revocable at the will of the principal despite the language to the contrary.
In the Bown and Landreneau cases, as in all of the other cases discussed above in which no power coupled with an interest was found, it was unnecessary to the holding to say that a power coupled with an interest requires the power to deal in the mandatary's name with the thing which is the subject of the power. It would have been sufficient to say in all of these cases that the mandatary had no interest in the thing which was the subject of his mandate. The requirement that an agent be able to deal with the property in his own name is not found in Hunt v. Rousmanier's Administrators, supra, but is a common law interpretation of that case. These requirements crept into Louisiana jurisprudence when the Corpus Juris definition of "power coupled with an interest," which is a common law consensus of interpretation of Hunt, was quoted in Fowler v. Phillips, supra. Hunt v. Rousmanier's Administrators, supra, which is not controlling over Louisiana Civil Code articles on mandate but which has affected them jurisprudentially as noted above, requires only that an agent have an interest in the property subject to his agency to constitute a power coupled with an interest. The power of an agent having legal or equitable title in the property to control it in his own name is a clear example of a power coupled with an interest but it is not the only way in which this power can be manifested.
The requirement that a mandatary have the power to control the property in his own name for the mandate to be irrevocable has been criticized in Louisiana.[5] If a mandatary has sufficient title in property subject to his mandate that he can sell or otherwise dispose of the property in his own name, an essential feature of mandate is destroyed. LSA-C.C. art. 2985 (quoted in footnote one above) defines a mandate as "an act by which one person gives power to another to transact for him and in his name ..." (emphasis supplied). A mandatary who contracts for himself and in his own name controls the property as an owner. It should be sufficient to require that a mandatary have a great enough interest in the property which he controls for and in the name of the principal that it would be inequitable *1167 or unjust to allow the principal to arbitrarily revoke the mandate. Such a mandate is permissible under LSA-C.C. art. 2986 which permits a mandate "for the joint interest of both parties."
A useful test to determine whether the interest of the mandatary in the property subject to the mandate is great enough to render the mandate essentially irrevocable is that proposed in Renshaw v. His Creditors, supra: that when the mandate forms an element of a synallagmatic contract, the mandate is essentially irrevocable. In such cases, the mandate is merely a means of executing a bilateral agreement, or is granted as a condition of the contract.[6] When the power coupled with an interest in the property subject to the power reaches this level such that it can be said that the contract containing the mandate is a bilateral or synallagmatic agreement, the principal cannot deny the mandatary his right in the property by revoking the mandate without just cause.
A mere interest in the exercise of the power, instead of an interest in the property upon which the power is to operate, is insufficient under this test to constitute a power coupled with an interest. Examples of a mere interest in the exercise of the power of mandate are the commissions, contingency fees, or other compensations to which a mandatary may be entitled if allowed to perform his duties. These have been held to be not sufficient to render a mandate irrevocable.[7]
However, when the authority of mandate over a thing is given in part as security for monies advanced or obligations incurred by the mandatary, or is necessary to effectuate such security, then it would be inequitable to allow the principal to revoke the mandate at will. An example of this is the giving of a mandate over property owned by the principal to secure payment of a debt owed by the principal to the mandatary.[8]
We now must determine whether the contract in the suit before us is another example of a mandate coupled with an interest given as security to the mandatary.

DOES THE MANDATE CONTAIN A "POWER COUPLED WITH AN INTEREST"?
As we have already determined, the contract in this case granted to Foreman a power of mandate to represent Montgomery and the other owners in the development and sales of their properties. The contract also provided that Foreman alone bore the expenses of development (Paragraph VI). Foreman was to develop the property in the manner he deemed "most suitable for attracting prospective purchasers and for the greatest enhancement in value to the property" (Paragraph III). The enhancement in value of the property would redound primarily to Foreman's benefit since Paragraph VI of the Agreement provides as follows:
"The Agent, J. Y. Foreman, realtor, is to pay the respective land owners the sum of Forty and no/100 ($40.00) Dollars per running foot cash on date of sale, for every lot sold or bought by him, the balance of the consideration of the sale or purchase of any lots involved herein being the profit of the said Agent as his consideration hereunder, and is to be his property to the exclusion of anyone."
Thus, it was contemplated that Foreman would recoup the monies he spent in improving the property from that portion of the price the properties would sell for after development which exceeded $40.00 per running foot.
*1168 Under these circumstances, we find that Foreman's power of mandate was coupled with an interest in the property over which he exercised the power so as to render the mandate essentially irrevocable. The contract between the parties was in the interest of both the principal and the mandatary such that it is in effect a synallagmatic contract.[9] Montgomery and the other owners were to receive the price set in the contract for each unit of property sold, and Foreman was to receive the profits generated by the monies he spent developing the property. The mandate given to Foreman was simply a means of executing the contract whereby both parties could profit from their interests in the property. Thus, the mandate in this case was "coupled with an interest" despite the fact that Foreman, as a technical matter, did not have the power to dispose of the property in his own name.
Having determined that this contract is a mandate coupled with an interest, we now must determine whether such a contract can survive the death of the mandatary.

CAN A MANDATE COUPLED WITH AN INTEREST SURVIVE THE MANDATARY'S DEATH?
LSA-C.C. art. 3027 (quoted above in footnote 2) provides that "the procuration [mandate] expires ... by the death, seclusion, interdiction, or failure of the agent or principal." The mandate coupled with an interest is a jurisprudentially recognized exception to this rule. Thus far, the Louisiana cases discussing this exception have only dealt with the death or failure of the principal.[10] The jurisprudence is to the effect that a mandate coupled with an interest survives the death or failure of the principal so as not to prejudice the rights acquired by the mandatary in the property subject to his mandate.
We feel that the same rationale applies to instances in which the agent dies. If the revocation of the mandate by the death of the principal would unjustly harm the property interests of the mandatary, so the revocation of the mandate by the death of the mandatary would unjustly harm the property interests of his estate. Therefore, if the contract is otherwise heritable, a mandate coupled with an interest should survive to the personal representative of the mandatary upon the latter's death.[11] LSA-C.C. art. 1999 provides:
"Every obligation shall be deemed to be heritable as to both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract."
In the case before us, the parties expressly provided that the contract would be heritable as to all parties (in Paragraph XIII). Also, the non-heritability of the contract is not necessarily implied from its nature since a mandate coupled with an interest has been held to survive the death of the principal.[12]

CONCLUSION
We conclude that for a mandate to be coupled with an interest so as to render it irrevocable, it is not necessary that the mandatary have the power to act in his own name. It is sufficient that the interest which is coupled with the mandate be an interest in the property subject to the mandate significant enough to render the contract of mandate bilateral or reciprocal. A mandate coupled with such an interest survives the death of the principal or, as in this *1169 case, of the agent, if there are representatives of the deceased agent who can assume his obligations.
Therefore, we hold that the contract of mandate did not expire with the death of J. Y. Foreman, and we affirm the trial court's ruling.
AFFIRMED.

APPENDIX
STATE OF LOUISIANA
PARISH OF LAFAYETTE
THIS AGREEMENT, made and entered into this 27th day of March, 1973, by and between:
J. BORING MONTGOMERY, M.D., single and of lawful age and a resident of the Parish of Lafayette, Louisiana,
EFFIE MONTGOMERY, single and of lawful age and a resident of the Parish of Lafayette, Louisiana,
MICHAEL H. MONTGOMERY, married to and residing with Imogene McCallum, a resident of Lafayette Parish, Louisiana, and
IMOGENE McCALLUM MONTGOMERY, married to and residing with Michael H. Montgomery, a resident of Lafayette Parish, Louisiana,
hereinafter sometime referred to as "Owners" and:
J. Y. FOREMAN, married to and residing with Patricia Hammill, a resident of Lafayette Parish, Louisiana, whose permanent mailing address is Post Office Box 3024, Lafayette, Louisiana
hereinafter sometime referred to as "Agent".
APPEARERS:
J. Y. FOREMAN
J. BORING MONTGOMERY, M.D.
MICHAEL H. MONTGOMERY
IMOGENE McCALLUM MONTGOMERY
EFFIE MONTGOMERY

WITNESSETH:

I.
The Owners declare that they are the sole owners of the following described property situated in the Parish of Lafayette, State of Louisiana:
Certain tracts of land situated in Sections 40 and 70, Township 9, Range 4 East, as shown more fully by the attached plat of survey prepared by Roland W. Laurent, dated November, 1972, and marked "Ne Varietur" for identification herewith.
These parcels of ground being identified as the land contained within the letters "A, B, C, D, E, F, G, H, A;" "I, J, K, L, I;" and "M, N, O, P, Q, R, M;" and outlined in black on said plat of survey.
The Owners declared that they are desirous of developing the above-discribed [sic] property so as to enhance the value thereof, by dividing same into lots, providing for streets and improving certain streets, and that in order to accomplish this purpose to their advantage and in order to market said land, they desire to list all of the above described property exclusively with J. Y. Foreman, a realtor, a real estate agent of the City and Parish of Lafayette, Louisiana, under the terms and conditions hereinafter set forth.

III.
In addition to the other considerations hereinbelow set forth, the Agent obligates himself to handle the hereinabove described property and to offer same for sale in the manner deemed by the Agent as most suitable for attracting prospective purchasers and for the greatest enhancement in value to the property.
The Agent hereby agrees, consents and obligates himself to develop the aforementioned property in the manner best suited for the sale of the property through the utilization of proper engineering to obtain the maximum number of marketable lots. All parties to this agreement agree that the proper development of the property may on occasion require that the lots vary in their dimensions according to the necessity of *1170 street installations and all other conditions requisite in the regulations of the City of Lafayette and the Regional Planning Commission.
The Owners bind and obligate themselves to dedicate to public use all streets and/or utility strips as may be necessary and as shown by plat of survey or plats of survey as may be prepared in carrying out this agreement.

IV.
It is understood and agreed by and between all parties to this agreement that the Agent shall have the authority to cause said land to be surveyed and divided into streets and lots in such a manner and in such sizes as he deems expedient and with the understanding that the Agent shall have the exclusive right and authority to decide in what manner and on what terms, conditions and restrictions the above-described property shall be developed, the Owners hereby agreeing that the Agent shall have the right to decide whether the said property shall be developed for residential or for commercial purposes; provided, however, that such designations comply completely with zoning restrictions in the City of Lafayette and Parish of Lafayette. The Owners agree to sign and execute all papers, instruments and documents necessary to carry into effect the development program decided upon by the Agent, provided that such papers, instruments and documents do not bind and obligate the Owners for any costs or expenses in connection therewith.

V.
It is further agreed that the Agent will bear in its entirety all expenses, including but not exclusively limited to, cost of engineering, street improvements, ground leveling and other expenses necessary to the proper development of the aforementioned property; the Owners are in no way liable for any such expenses or development costs at any time.

VI.
The Agent, J. Y. Foreman, realtor, is to pay the respective land owners the sum of Forty and no/100 ($40.00) Dollars per running foot cash on date of sale, for every lot sold or bought by him, the balance of the consideration of the sale or purchase of any lots involved herein being the profit of the said Agent as his consideration hereunder, and is to be his property to the exclusion of anyone.
The Agent is expressly empowered to buy or sell any lot involved herein for such price and under such terms and conditions as the Agent may deem fit and proper; provided the said Owners are to be paid the price per running foot hereinabove established at the time of the sale of any lot involved herein.
The Agent and Owners may, through mutual consent, enter into credit sale agreements under which terms the Owners receive payment at the above stated price at a future date or through future installments.
The Owners expressly agree to sign and execute any act of sale or conveyance necessary to transfer any portion of the above-described property to the said Agent, or to such purchaser as the said Agent shall produce for the prices mentioned above.

VII.
The Owners specifically declare that in order to expedite the sale of future portions of the property described above in individual lots to contractors for the construction of houses on individual lots they will subordinate their vendors' lein to a first mortgage of any financial institution or financial institutions, with the understanding they will receive payment for said subordination (whether or not the house constructed on an individual lot is sold), no later than six (6) months from the date of the subordination.

VIII.
The Owners are to pay their respective portions of all taxes due or taxes which may become due on any of the property involved herein until the time in which the property is actually sold by the Agent.

*1171 IX.
The said Agent is hereby empowered, authorized and directed to negotiate with the Police Jury for the Parish of Lafayette, State of Louisiana, in all drainage problems affecting the land involved herein and is hereby authorized to have such Police Jury close existing drainage ditches and canals by providing in substitution thereof, such other canals, drains and ditches as may be needed to provide for the adequate and efficient drainage of said property.
It is further understood and agreed by and between all parties hereto that the Agent shall have complete authority to make such improvements as he deems necessary for the proper development of said property and such improvements as may be required to secure Veterans' Administration, Federal Housing Administration or any other Federally financed loans on homes to be erected on any lots carved out of said property, all of which such improvements, regardless of type or character, shall be at the sole cost and expense of the Agent.

X.
It is further understood and agreed by all parties hereto that the said Owners list the hereinabove described property exclusive with the said Agent for a period of fifteen (15) years from date of this contract with an option on the part of the Agent to renew this agreement under the same terms and conditions described herein for an additional ten (10) years. The Owners hereby acknowledge that the consideration for this listing shall be the payment of the improvements as well as the development cost of said property by the said Agent, in addition to other consideration hereinabove mentioned.

XI.
It is further understood and agreed by and between all parties hereto that the said Agent shall have the complete authority to decide on the building restrictions to be imposed on said property. Such restrictions as may be deemed necessary and advantageous to development by the Agent shall be outlined and included in the Act of Dedication for Subdivisions created from the property hereinabove described.

XII.
The Owners shall tender a legal, valid and merchantible title to the hereinabove described property, in the absence of which this agreement shall be null and void.

XIII.
This agreement shall be binding upon the successors and assigns of all parties. All of the stipulations herein contained and all of the obligations herein assumed shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties hereto.

XIV.
THUS DONE AND SIGNED in triplicate originals in the Parish and State aforesaid, on the day and date first hereinabove mentioned in the presence of the undersigned competent witnesses who signed with Appearers and me, a Notary Public, duly qualified for the Parish of Lafayette, State of Louisiana after due reading of the whole.
(Signatures of parties and witnesses omitted.)
NOTES
[1] See LSA-C.C. art. 2985:

"A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs."
[2] The Louisiana Civil Code articles relevant to irrevocable mandates are LSA-C.C. articles 3027 and 3028 as revised by Acts 1882, No. 19. These articles, unchanged since 1882, provide as follows:

"Art. 3027. Expiration of mandate; irrevocable powers
Art. 3027. The procuration expires:
By the revocation of the attorney.
By the attorney's renunciation of the power.
By the change of condition of the principal.
By the death, seclusion, interdiction or failure of the agent or principal.
But the powers of attorney by public act or by writings under private signature, or by letter, to transfer on the books of stock corporations, bonds or shares of stock in said corporations, shall be irrevocable, and shall not expire by the death, seclusion, interdiction or failure of the principals, where the said bonds or shares of stock have been previously sold to the persons holding the said powers of attorney, for value received, and said facts are set forth in such powers of attorney." (As amended by Acts 1882, No. 19)
"Art. 3028. Revocation by principal
Art. 3028. Except in the case of irrevocable powers of attorney, as described in the preceding article, the principal may revoke his power of attorney, whenever he thinks proper, and, if necessary, compel the agent to deliver up the written instrument containing it, if it be an act under private signature." (As amended by Acts 1882, No. 19)
The Court in Renshaw found that the legislature in the 1882 revision of these articles intended to retain the jurisprudential exceptions to revocable mandates as quoted here despite the express inclusion of only one type of exception in the last paragraph of Article 3027.
[3] Cf., Comment 4 La.L.Rev. 601 (May 1942).
[4] The court in Zatarain, supra, stated:

"To constitute a mandate of the class that is coupled with an interest sufficient to make the mandate irrevocable, the interest of the agent in the subject matter of the agency must be such as to give the agent the right to deal with the res in his own name"procurator in rem suam". Renshaw v. His Creditors, 40 La.Ann. 37, 3 So. 403; Bryson v. United Gas Public Service Co., La.App., 169 So. 350; Marchand v. Gulf Refining Co. of Louisiana, 187 La. 1002, 175 So. 647. See e.g., Jacquet v. His Creditors, 38 La.Ann. 863." 138 So.2d 163, 166.
The actual quote in the Renshaw case, however, is as follows:
"The article 3027, as it stood before the amendment, was copied from article 2003 of the Code Napoleon, and was a principle equally of the Roman law and of universal jurisprudence. It has been universally held that it did not apply to what, at common law, are known as "powers coupled with an interest," corresponding to those which, in the terminology of the Roman law, made the mandatary a "procurator in rem suam." Hunt v. Rousmanier, [21 U.S. 174] 8 Wheat. 174 [5 L.Ed. 589]; Story, Ag. §§ 164, 173, 477, 483, 489; Liv.Ag. § 30; 3 Zacharia, p. 134; 18 Duranton, No. 134; Troplong, Mandat No. 728, 737."
3 So. 403, 404. (Emphasis added.)
The court further said in Renshaw that the amendment to LSA-C.C. art. 3027 did not alter the effect of the article. As noted above the court in Renshaw did hold the mandate was irrevocable on the ground that the contract was a synallagmatic contract.
[5] See 4 La.L.Rev. 601 (May 1942).
[6] In Union Garment Co. v. Newburger, 124 La. 820, 50 So. 740 (La. 1909), the La. Supreme Court found that a power of attorney was not revocable at will since it formed an essential part of a contract.
[7] Cf. Hunt v. Rousmanier's Administrators, supra; Taylor v. Burns, 203 U.S. 120, 51 L.Ed. 116, 27 S.Ct. 40 (U.S. 1906), Louque v. Dejan, supra; and Bryson v. United Gas Public Service Co., supra.
[8] See Renshaw v. His Creditors, supra, and Eduardo Fernandez Y Compania v. Longino & Collins, supra.
[9] The trial court agreed with our findings by ruling that the contract was bilateral. A contract is bilateral, synallagmatic, or reciprocal when it creates correlative obligations in the parties. See Levasseur, Précis in Conventional Obligations: A Civil Code Analysis, p. 23 (1980).
[10] See, In re Buller's Estates, 192 La. 644, 188 So. 728 (La. 1939); Renshaw v. His Creditors, supra; Succession of Toombs, 167 La. 21, 118 So. 488; Copelle v. Dalton, 4 Mart. (N.S.) 123 (La. 1826).
[11] This is the result reached in some common law jurisdictions with respect to agencies coupled with an interest. See 3 Am.Jur.2d 460, Verbo "Agency," § 60.
[12] See Succession of Toombs, supra.