MARGARET DIXON *et al.*, *Appellees*, v. MARY DIXON *et al.*, *Appellees*, and EDWARD FLAHERTY *et al.*, *Appellants*.

No. 17,181.

SYLLABUS BY THE COURT.

1. TRUST DEED—*Construction—Intention Must Govern.* In construing a deed of trust requiring the disposition of property among various persons, the rule favoring vested rather than contingent remainders does not operate to change or subvert language and intention clearly expressed· in such deed. In construing such instruments manifest intention is of first importance.

2. ———— *Grantee's Right to Direct Disposition of Property.* In such deed of trust executed by a husband and wife was a provision setting apart to the wife, for her sole and separate ufe and management, certain land, she to have and enjoy the entire rents and profits derived therefrom unless she should otherwise elect; the trustees therein agreed to pay the taxes during the life of the wife and to pay off any encumbrance thereon; it further provided that the husband, in consideration of one dollar and the covenants and agreements contained in such deed, granted, bargained, sold and conveyed unto the wife this land, to have and to hold during her life; if she should die intestate then it should descend in equal shares to the children of the husband and wife, but she should have the right to will the land to any one or more of such children. *Held*, that the wife, by virtue of these provisions, had the irrevocable right to say to which of such children the land should go at her death, and her testamentary disposition thereof as provided, after the decease of her husband, was valid.

Appeal from Geary district court.    Opinion filed July 7, 1911.    Affirmed.

*Lee Monroe*, and *W. S. Roark*, for the appellants.

*Thomas Dever*, for the appellees.

The opinion of the court was delivered by

WEST, J.:    James and Bridget Dixon, being of advanced years, executed an instrument conveying to two of their eleven children about 625 acres of land, "in

trust, however, for the use and benefit of .the children of the parties of the first part, to be held and cared for, and disposed of as follows:" Then, after providing for the funeral expenses of James Dixon in case of his death, it proceeded:

"Upon the death of said Bridget Dixon, if all of said children have arrived at the age of majority, all of said . . . real estate . . . shall go in equal shares to all of the children of the parties of the first part, except James Thomas Dixon and Francis Jerome Dixon, who are otherwise provided for herein, or the survivor or survivors of them. If any one of said children be dead, the children, if any, of such child shall be entitled to his or her share, and upon the death of said Bridget Dixon, if all of said children then shall have arrived at the age of majority, the parties of the second part covenant and agree to convey to said children, to wit: All of the children of the parties of the first part except James Thomas Dixon and Francis Jerome Dixon, or the survivors of them, and the legal representatives of any that may be deceased, if such legal representatives should be the children of such deceased one or more of said children."

It was further provided that if Bridget Dixon should die before all of the children became of age the property should not be divided until they all reached majority, but should then be divided and conveyed as thereinbefore directed. This instrument was executed in May, 1898. James Dixon died July 5, 1898, and Bridget Dixon died November 8, 1903. At the time the instrument was executed one of the eleven children, Julia, was married to W. H. Flaherty. She died September 28, 1901, without issue. The heirs of W. H. Flaherty claim Julia's share of the land, and, their claim having been denied by the trial court, they appeal. Their right depends upon the construction of the language quoted.

It is earnestly insisted that the rule favoring vested rather than contingent remainders requires us to hold that Julia took a vested interest in the land which

Dixon v. Dixon.

must descend to her heirs, and that as she left no children, her husband inherited. But we are aware of no rule which requires us to disregard the perfectly plain and manifest intention of the parties who executed the instrument, and it is impossible to read it and not be convinced beyond peradventure that they intended to keep the property in the lineal family. The word "children" is used over and over again, and the words "and the legal representatives of any that may be deceased, *if such legal representatives should be the children of such deceased one or more of said children,*" eliminate all doubt as to the intention.

*Bunting v. Speek,* 41 Kan. 424, is cited in support of the opposite conclusion; also, *Holt v. Wilson,* 82 Kan. 268. In the former it was held that "no remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶ 2.) There one devised a life estate to his wife "to have and to hold them . . . during her lifetime, and then they are to descend to my legal heirs." (p. 426.) At his death the testator left two married sons, one of whom he had not heard from for several years. The widow and the other son conveyed their interest to a third party who remained in exclusive possession for twenty years. Then a grandson of the testator, whose father died before the widow, sued as sole heir. He was son of the son who with the widow had conveyed, and he insisted that his father had no vested interest to convey, but only a contingent one. The court merely and only decided that it was a question of construction and intention whether the testator by the words used meant for the estate to vest (after the life estate) in those who should be his heirs at his own death or in those who should be his heirs at the death of the widow, and it was held that the language meant the former. But here there is an express direction to convey to the surviving children, and the trustees had no authority to

convey to any other representatives of deceased children than their surviving children.

The rule favoring vested remainders operates only in cases of doubtful or conflicting language and intention, never to change or subvert language and intention so clear as to be free from doubt. In *Holt v. Wilson*, 82 Kan. 268, the testatrix devised the land to her husband during the term of his natural life, any residue left at his death to an adopted son, if such son should then be living, but if then dead leaving child or children the residue to go to such child or children. This was held to vest a fee in the adopted son, who was living when the life estate expired which was not impaired by a subsequent provision that in case he should die without issue "either before or after the first legatee's estate expires" it should go to another. The decision is based on the proposition that the intention to vest a fee in the adopted son was so clearly expressed that it could not be overthrown by the peculiar provision which followed. The adopted son was living when the life estate expired, and it was held that he took under the will a full fee title, as the estate was to go to him if then living, and no mention of his heirs was necessary. (Gen. Stat. 1868, ch. 22, § 2, Gen. Stat. 1909, § 1651.) It was not there decided that had he died without issue, his widow would have inherited the estate. It was there said:

"The direction that in case W. N. Holt died without issue before the death of S. E. G. Holt the estate should pass to Martha M. Wilson or her heirs is in no respect inconsistent with the preceding clause. The repugnancy arises over the use of the words 'or after,' because, under the preceding clause, upon the death of S. E. G. Holt the fee title passed to W. N. Holt; and that portion of the latter clause which directs that the estate shall pass to Martha M. Wilson or her heirs in case of his death after the estate had already vested in him is, of course inconsistent with the absolute interest which he took under the first clause, and is therefore void." (p. 274.)

That is, if W. N. Holt had died without issue before S. E. G. Holt, then upon the death of the latter the estate would have gone to Wilson. The decision therefore supports the construction we have indicated.

The language of Chancellor Walworth in *Moore v. Lyons*, 25 Wend. 118, is quoted to the effect that when a remainder is so limited as to take effect in possession, if ever, upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by efflux of time, the remainder vests in interest as soon as the remainder-man is *in esse* and ascertained; provided nothing but his own death will prevent such remainder from vesting in possession. But he also says:

"Yet if the estate is limited over to another in the event of the death of the first remainder-man before the determination of the particular estate, his vested estate will be subject to be divested by that event, and the interest of the substituted remainder-man, which was before either an executory devise or a contingent remainder, will, if he is *in esse* and ascertained, be immediately changed into a vested remainder." (p. 143.)

If, then, as this deed limited the estate over to the issue or surviving brothers and sisters of Julia in the event of her death before distribution time, why would her share not vest under this very rule in such survivors, she having died before that time without issue?

*Parker v. Ross*, 69 N. H. 213, is said to be squarely in point. There the devise was to D for life, remainder in four equal shares to S and the children of the three deceased sisters of the testator, and in the event of the death of the children of any sister their portion was to be divided equally among the other legatees. It was held that the children took a vested remainder, but the first sentence of the opinion is: "A remainder contingent in terms will be held vested if such was the intention of the testator." (p. 214.) Near the close

is this language: "The testator provided for the contingency of the death of all the children of either sister before the death of Dorcas, by giving their portion to the other legatees. The interests of the children now living are vested, but are liable to be divested by their death before that of the life tenant." (p. 215.)

*Cox v. Handy,* 78 Md. 108, is also relied on. There it was held that under a will directing the property to be at the death of the testator's widow, the life tenant, divided among the testator's children, the child or children of any deceased child to take the portion to which the parent, if living, would have been entitled, the children of a child dying before the period of distribution were substituted in his place; but the share of a child dying without children was not divested and went to his personal representatives, the property being bank stock. In the opinion the court said:

"The clause declares that the child or children of a deceased child shall take the parent's portion; but it does not state what is to become of the portion of a deceased child in case he should die without children. Is the estate which was granted to him by the previous terms of the clause to be divested? If so, to whom is it given?" (p. 123.)

But James and Bridget Dixon provided for exactly this contingency when they inserted in the deed "to all of the children . . . or the survivor or survivors of them."

In *McArthur v. Scott,* 113 U. S. 340, there was no provision as to survivorship as there is here. Running through all the decisions is the doctrine that manifest intention is of first importance, and a careful examination of the authorities relied upon, and many others, leads to no departure from this doctrine. But suppose it be conceded, but not decided, that the deed created a vested remainder in Julia. Then, clearly, it was to be divested at her death, before distribution time, without issue, and go to her surviving brothers

and sisters and the children of those deceased. No
reason is assigned why this provision which was made
could not legally be made. (*Hall v. Cressey,* 92 Maine,
514; *Williams v. Hedrick,* 96 Fed. 657; *Chapin v. Nott,*
203 Ill. 341; *Tennell v. Ford et al.,* 30 Ga. 707; *Rosen-
garten v. Ashton,* [Pa. 1910] 77 Atl. 562.)

The interest of Julia, its character being more im-
portant than its name, passed at her death to the
living brothers and sisters and the children of those
deceased, by virtue of the deed of trust, and not to her
husband by virtue of the statute.

Respecting another parcel of land the instrument
contained the following:

"The said James Dixon agrees that lots one (1), two
(2), three (3), and four (4) of section fifteen (15),
township eleven (11), range five (5), consisting of
about one hundred and fifty acres, and situated in the
county of Geary and state of Kansas, shall be set
apart for the sole and separate use of the said Bridget
Dixon, and the said Bridget Dixon is to have the sole
management of the property so set apart to her, and
is to have and enjoy the entire rents and profits de-
rived therefrom unless she otherwise elects. The par-
ties of the second part hereby agree to pay the taxes
on the tract of land set apart to the said Bridget
Dixon each year during her life, and if there is any
encumbrance on the tract of land so set apart to her,
the parties of the second part covenant and agree to
pay off said encumbrance out of the income from the
lands conveyed to them in trust, as soon as possible.
In consideration of the sum of one dollar, to him in
hand paid, and the receipt whereof is hereby acknowl-
edged, and the covenants and agreements herein, the
said James Dixon does hereby grant, bargain, sell and
convey unto the said Bridget Dixon lots one (1), two
(2), three (3), and four (4) in section fifteen (15),
township eleven (11), range five (5), in the county of
Geary and state of Kansas, to have and to hold the
same during her life. If the said Bridget Dixon dies
intestate, the said last above-described lots shall de-
scend in equal shares to the children of the parties of
the first part, but the said Bridget Dixon shall have

25—85 KAN.

the right to will said land to any one or more of the children of the parties of the first part."

This property was willed to certain of the children by Bridget Dixon after her husband's decease, and it is argued that as the power to will was not coupled with an interest, it ceased with the death of the grantor, James Dixon, and hence the devisees can not hold under the will, but that the land descends to the heirs, including the husband of Julia.

The case of *Hunt v. Rousmanier*, (8 Wheat.) 21 U. S. 174, is relied upon. It was there held with reference to a contract by which a borrower of money on a ship executed to the lender a power of attorney to sell his interest in the ship and apply the proceeds on the loan, that the death of the borrower ended the power. This is a leading case, and states the doctrine that a power coupled with an interest must include an interest in the thing itself, not an interest in that which is produced by the exercise of the power. But a power of attorney authorizing another to act for the one granting the power must not be confused with a power vesting an absolute authority in another to act for himself. The deed in question was not a power of attorney authorizing Bridget Dixon to will this land. It was a conveyance of the entire estate by James Dixon, granting to her the life estate, remainder to their children, with the provision that she should have the right to will it to any one or more of such children only. It expressed a consideration. It was a valid, irrevocable conveyance and grant. After its execution and delivery James Dixon had no remaining estate in the land—it had all passed from him by the deed. Bridget Dixon had the full life estate, together with a contract to remove encumbrances and keep the taxes paid, and it was for her to say whether at her death it should go to the children by virtue of the deed, or to certain of them only by virtue of her will. She had a valuable interest in the land, which the deed by its

Dixon v. Dixon.

terms authorized her to will, and if those terms be construed to mean her right to will away the remainder only it can not be said that an interest in such remainder should be severed and differentiated from her interest in the estate or land itself. The very power to dispose of the remainder largely as she chose was practically equivalent to an interest therein. In *Hunt v. Rousmanier*, (8 Wheat.) 21 U. S. 174, it was said:

"The title can, regularly, pass out of the person in whom it is vested, only by a conveyance in his own name; and this can not be executed by another for him, when it could not in law be executed by himself. A conveyance in the name of a person who was dead at the time would be a manifest absurdity." (p. 202.)

This shows that the great chief justice had in mind a power to act for another, and not for one's self.

In *Pacific Coast Co. v. Anderson*, 107 Fed. 973, this decision is discussed by the ninth circuit court of appeals, and it is said :

"This conclusion was reached upon consideration of the fact that the power of attorney contained no words of conveyance or assignment, but was a simple power to sell and convey, and would, therefore, not survive the death of him who made it. The learned chief justice proceeded to discuss the exceptions to the rule in cases of power coupled with an interest, and to define the nature of the interest which would render such a power irrevocable. But he did not assert that no powers were irrevocable by the act of the principal save those which were thus coupled with an interest." (p. 975.)

It was further said:

"It is conceded by all the authorities that in construing such an instrument as that which is involved in the present case the principal question is, What was the intention of the parties? Was it intended to transfer the title or the right of possession of the subject matter of the power, or was it the intention that the grantor should retain them? The intention, however imperfectly expressed, if ascertainable, will be controlling." (p. 977.)

In *Sulphur Mines Co. v. Thompson,* 93 Va. 293, it was said:

"Where the power is coupled with an interest, so that it may be exercised in the name and as the act of the donee of the power, the death of the person who conferred the power has no effect upon it." (p. 311.)

"But where the estate or interest upon which the power is to be exercised passes with it, and vests in the donee of the power, he acts in his own name. The estate or interest being in him, he can convey it in his own name." (p. 312.)

In *Frink v. Roe,* 70 Cal. 296, it was said:

"The doctrine of *Hunt v. Rousmanier,* (8 Wheat.) 21 U. S. 174, and of other cases on the question, as we understand them, requires, in cases relating to real estate, that such an interest or estate shall pass to the agent as will entitle him to execute the power in his own name." (p. 310.)

"Where an authority or a power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, there, unless there is an express stipulation that it shall be revocable, it is from its own nature and character, in contemplation of law, irrevocable, whether it is expressed to be so upon the face of the instrument conferring the authority or not." (*Durbrow v. Eppens,* 65 N. J. Law, 10, 17.)

We have no doubt that it was intended by these provisions of the deed to vest in Bridget Dixon the complete, irrevocable right and power to will this land to any of the children she might prefer, such power being a part of the entire estate of James Dixon conveyed by the deed, and supported by the consideration imported thereby and therein expressed. We hold that the death of James Dixon prior to the exercise of this power left it unimpaired.

The judgment is affirmed.

Mr. Justice Benson concurs in the rules stated in the syllabus, but not in all that is said in the opinion.