## BEALE R. HOWARD

*vs.*

## JOHN RUSH STREET.

*Agency*: *revocation; rights of agent. Real estate brokers*: *commissions.*

Where the authority of an agent is not coupled with an interest, nor conferred for a valuable consideration, it may be revoked at any time, at the pleasure of the principal.　p. 300

But where a sale made by a principal is the result of the agent's efforts, made before his authority was revoked, the agent can not be deprived of his right to the commissions agreed upon, if it be established that the purpose of the principal, in withdrawing the authority of the agent, before the sale was actually consummated, was to avoid the payment of the commission.

pp. 300, 301

In such cases, the evidence of the purchaser as to whether or not his action in making the purchase had been influenced in any way by the agent, before the revocation of the agent's authority, should be received.　·　pp. 303-304

While sometimes the misleading effect of one prayer may be held to have been corrected by a prayer of the opposite party, such a rule is not to be applied in the case of a serious error.

p. 302

*Decided April 7th, 1915.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The following are the prayers of the respective parties, and the action of the Court thereon:

*Pltff.'s 1st Prayer*—The Court instructs the jury at the request of the plaintiff, that if they find from the evidence that the plaintiff was employed by the defendant in May, 1911, to sell his farm known as "Verdant Valley" at a commission of five per cent, and that the plaintiff in pursuance of said employment showed said farm to Frank A. Bonsal, in the spring and early summer of 1911, and introduced said Bonsal to the defendant in June, 1911, and kept said farm before said Bonsal for several months thereafter, and that the defendant and said Bonsal continued said negotiations from time to time until October, 1911, and again during the summer and autumn of 1912, when the defendant sold said farm to said Bonsal, and further find that the efforts of the plaintiff were efficient in bringing about said sale, then the plaintiff is entitled to recover in this action, even though the jury may further find that in March, 1912, the defendant wrote the plaintiff the letter offered in evidence, withdrawing said farm from sale. (*Granted.*)

*Pltff.'s 2nd Prayer*—If the jury find for the plaintiff under his first prayer, and further find that the defendant's farm sold for thirty-five thousand dollars ($35,000), then the plaintiff is entitled to recover the sum of seventeen hundred and fifty dollars ($1,750), with interest thereon in the discretion of the jury from January 1st, 1913. (*Granted.*)

---

*Deft.'s 1st Prayer*—The defendant prays the Court to instruct the jury that under the pleadings and evidence in this case there is no legally sufficient evidence to entitle the

plaintiff to recover, and their verdict must therefore be for the defendant. (*Refused.*)

*Deft.'s 2nd Prayer*—The defendant prays the Court to instruct the jury that if they believe from the evidence that the plaintiff originally introduced the witness Frank Bonsal to the defendant, and that said Bonsal thereafter became interested as a prospective purchaser of the farm of the defendant referred to in the evidence, and that before said sale was consummated the defendant decided that he would not sell said farm and withdrew the same from the market, and notified both the said Bonsal and the plaintiff that it had been so withdrawn; and shall further believe from the evidence that the plaintiff immediately after receipt of formal notice to such effect expressed his gratification that said farm had been so withdrawn from the market, and made no claim to any compensation for having procured the said Bonsal as a prospective purchaser therefor; and that the defendant was led by said conduct of the plaintiff to understand that he had no claim against him for having procured the said Bonsal as a prospective purchaser for said farm; and if the jury further believe from the evidence that the defendant some months later in good faith changed his mind and determined to put said farm on the market again, and entered into negotiations with the said Bonsal for the sale of the same, and that it was subsequently purchased by the said Bonsal under the written agreement offered in evidence after lengthy negotiations in which the plaintiff took no part, then under the pleadings and evidence in this case the plaintiff is not entitled to recover the commission sued for herein. (*Refused.*)

*Deft.'s 3rd Prayer*—The defendant prays the Court to instruct the jury that if they believe from the evidence that the plaintiff originally introduced the witness Frank Bonsal to the defendant, and that the said Bonsal thereafter became interested as a possible prospective purchaser of the farm of the defendant referred to in the evidence, but was pecuniarily unable at the time to purchase the same, and that while the said Bonsal was still in a position of pecuniary inability

to purchase said farm, the defendant withdrew said farm
from the market, and so notified both the plaintiff and said
Bonsal to such effect, and shall further believe that the said
Bonsal thereupon abandoned the idea of attempting to pur-
chase said farm, and that the plaintiff, after being notified of
the withdrawal of said farm from the market as aforesaid
wrote the defendant that he was delighted to hear the defend-
ant was not going to sell said farm, and made no claim to
any compensation for having interested said Bonsal in the
same, and that at a subsequent interview with the defendant
in Washington, the matter of the withdrawal of said farm
from sale was again mentioned, and the plaintiff again made
no claim to any compensation for having interested the said
Bonsal therein; and that in the month of July following the
defendant acting in entire good faith changed his mind and
determined to sell said farm, and thereupon entered anew
into negotiations with the said Bonsal for the sale of said
farm, said negotiations extending until about October 12th,
when the sale was finally consummated by the defendant
making the said Bonsal the concessions as to deferred pay-
ments on the purchase price of said farm set forth in the
agreement of October 15th, 1912, and that from the time of
the withdrawal of said farm from sale as aforesaid, the plain-
tiff never made any further efforts either to induce the
defendant to sell said farm to the said Bonsal or to induce
the said Bonsal to purchase it from the defendant, and, in
fact, took no part whatsoever in the negotiations beginning
in (in) July, 1912, and ending in October, 1912, for the
sale of said farm, then, under the pleadings and evidence in
this case the plaintiff is not entitled to recover the commis-
sion sued for herein.   (*Granted.*) ·

*Deft.'s 4th Prayer*—The Court instructs the jury that if
they believe from the evidence that the defendant placed his
farm "Verdant Valley" in the hands of the plaintiff for sale
at $35,000, with the understanding that he should receive a
commission of 5% on the purchase price if he found a pur-
chaser therefor, then the defendant had a legal right to ter-

minate said agency and withdraw said farm from sale at any
time prior to the time the plaintiff should produce a pur-
chaser ready, willing and able to buy said farm at such price;
and that if the jury shall believe from the evidence that the
defendant did so withdraw said property from· sale, and
notified the plaintiff to such effect, and that the defendant
expressed his assent to such withdrawal, then the defendant
had a legal right at any time thereafter to change his mind
and again put said farm on the market and was under no
legal obligation to refrain from negotiating thereafter with
any prospective purchaser whom the plaintiff had introduced
to him or interested in said property prior to the withdrawal
of the same from sale as aforesaid, and that by so dealing
with any such purchaser under the circumstances aforesaid
and selling said property to him, the defendant did not
become obligated to pay the plaintiff said commission of 5%
upon the purchase price for said property, and if the jury
believes from the evidence that the sale of the defendant's
property to the witness Bonsal was made under such circum-
stances, and after the employment of the plaintiff to make
such sale had been terminated in good faith by the defendant
and assented to by the plaintiff as aforesaid, then, under the
pleadings and evidence in this case the plaintiff is not entitled
to recover. (*Refused.*)

*Deft.'s 5th Prayer*—The defendant prays the Court to
instruct the jury that under the pleadings and evidence in this
case, in order for them to find that the plaintiff was the pro-
curing cause of the sale of the defendant's farm "Verdant
Valley" to the witness Bonsal, it is not sufficient for the jury
merely to find that the plaintiff interested the said Bonsal
in the purchase of said farm, and introduced and put him into
communication with the defendant, but the jury must further
believe, in order to entitle the plaintiff to recover, that such
introduction was the foundation upon which the negotiation
of said farm was begun and conducted, and that the nego-
tiations so begun by the plaintiff were the ultimate cause of
the sale by the defendant to the said Bonsal; and if the jury

believe from the evidence that the negotiations which the plaintiff began with the said Bonsal were subsequently broken off, by the defendant's withdrawal in good faith of said farm from sale, and that such withdrawal was assented to by the plaintiff, who expressed his pleasure at the same, and that the defendant subsequently changed his mind and put said farm on the market again, and entered into negotiations with the said Bonsal for the sale and purchase of the same, which new negotiations culminated in the sale of October 15th, and that the plaintiff took no part in such new negotiations, then under the pleadings and evidence in this case the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Osborne I. Yellott* and *Moses R. Walter,* for the appellant.

*S. A. Williams* and *Elmer J. Cook,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered by the appellee against the appellant, in an action for commissions on the sale of the appellant's real property, known as the Verdant Valley Farm, and situated in both Baltimore and Harford Counties. The record contains eight exceptions to the rulings of the Court—seven relating to questions of evidence and one to the ruling on the prayers. Two prayers were offered by the appellee and five by the appellant. The Court granted both of those for the appellee and also the third and fifth for the appellant, but refused his first, second and fourth. The first of the appellant's asked the Court to direct, as a matter of law, a verdict for the defendant. It will be necessary, for a determination of the correctness or incorrect-

ness of the Court's ruling thereon to review the testimony so as to ascertain whether the plaintiff presented such a state of facts as entitled him to recover.

The appellee owned and lived upon a farm adjoining that in question of the appellant, and had been an intimate friend of the appellant for a number of years. He was a member of hunt clubs of the neighborhood and an ardent fox hunter. He had an extensive acquaintanceship among the hunting class, and annually rented his house and premises to the hunt clubs for a month. The appellant for the last several years had only occupied his farm in the summer; living in Washington during the winter. Among the intimates of the appellee was Mr. Frank A. Bonsal, the owner of a farm in the Green Spring Valley, and himself an ardent hunter, having visited the appellee's farm with the hunt clubs, and having for a number of years hunted over the farms of both the appellee and appellant, but who was not acquainted with the appellant. Mr. Bonsal had on several of his visits expressed to the appellee his desire to own the farm of the appellant, and, in the spring of 1911 requested the appellee to get a price on it. The appellee wrote to the appellant for that purpose, but received no answer, and two weeks later wrote again, Mr. Bonsal in the meantime having inquired of him whether he had found out the price. In answer to these two letters, the appellee received the following letter, which forms the contract sued on in this case:

"Washington, D. C., May 16, 1911.
"*Mr. John Rush Street.*

"*Dear Rush:*

"It was not my intention to ignore your question. Yes; Verdant Valley Farm is for sale. $35,000 is the price I place on it. My assessment (including personalty) last year was nearly $25,000. I carry about that amount of fire insurance (paid in advance 2½ years); possession given at once if desired. I would say there are over 80 acres in wheat and rye, 80 acres in corn,

75 acres in grass, 100 acres in pasture, 40 acres in woods, 5 acres in oats, 7 acres in cowpeas.

"I think the usual commission is 5%. I would be glad if Rush Street would earn this commission.

"Yours truly,

B. R. Howard."

The appellee sent this letter to Mr. Bonsal and asked him to come up and go over the place. About ten days thereafter Mr. Bonsal, with his wife and son, went to the farm of the appellee, and, after spending the night there, visited Verdant Valley Farm, and, in company with the manager of the place, went thoroughly through the house and buildings and over the land, spending about four hours in the inspection.

The appellee immediately wrote the appellant of this visit and that Mr. Bonsal was interested in the place. On June 18th, following this visit, Mr. Bonsal, with two of his brothers-in-law, rode to the appellee's home, whereupon the appellee called the appellant on the telephone, who at that time was at his farm, and invited him over to meet Mr. Bonsal. Mr. Howard went over and the introduction was made, and, on the return of Mr. Bonsal and his friends, they all, including the appellee, called at Mr. Howard's place.

The appellee further testified that he constantly, after the receipt of the letter, called to see Mr. Bonsal at his Baltimore office to talk over the matter of the sale with him, but that after the introduction by him of Mr. Bonsal and the appellant, the negotiating was principally carried on directly between them, although he continued to call on Mr. Bonsal in reference to it.

The appellee learned indirectly that the farm had been withdrawn from the market in October, 1911, and in March, 1912, received a letter from the appellant, advising him of the withdrawal. We will insert only the portion of the letter in any way bearing on this controversy:

"Verdant Valley Farm is not on the market. The understanding between us on a 5% basis, is over. If, in the future, the spirit moves us to dispose of this property, I shall stipulate that the sum of five hundred dollars be the compensation to the agent who brings the purchaser. I make this statement, Rush, to avoid any possibility of a misunderstanding."

The appellee replied to this letter, to the effect that he was glad he was not going to sell the place, for too many of the old places were changing hands.

In April he called on Mr. Howard in Washington, and in talking about the farm, Mr. Howard had said to him: "You know if Mr. Bonsal had bought the place last fall, you would have been entitled to a commision of seventeen hundred and fifty dollars." In the latter part of August, 1912, the appellee and his wife spent the night at Mr. Howard's at Kennebunkport, Maine, and the appellant then told him positively the farm was not for sale. In October the appellee learned that the appellant had sold the farm to Mr. Bonsal and wrote a letter claiming he was entitled to the commission. The following is the letter in reply to that claim:

"October 21, 1912.

"*Dear Rush*:

"By what process of reasoning you can reach the conclusion that I am indebted to you for any service in the recent sale, is beyond my comprehension. I had not intended replying to your note, as your contention seemed ludicrous; but I have no desire to be discourteous or unkind. Now, Rush, I shall be brief and to the point. You had no more to do with the sale of Verdant Valley than a jack rabbit, and this you know as well as I do. A year or more ago the property was withdrawn for sentimental reasons, and I never expected to offer it again. Had it been sold at that time the chances are 2 to 1 that Mr. Bonsal would not have been the purchaser, and therefore you lost nothing by the withdrawal.

"I find among my letters, a copy of one written to you in March, containing the following: 'Verdant Valley Farm is not on the market. The understanding between us and others on a 5% basis is over. If, in the future, the spirit moves me to dispose of this property, I shall stipulate that the sum of $500 be compensation to the agent who brings me a purchaser. I make this statement, Rush, to avoid any possibility of a misunderstanding.' Have I ever asked you or ever remotely hinted that I would like you to interest yourself in the matter? Most emphatically no. Then, how in heaven's name can you have the nerve, or rather gall, to ask recognition in the deal? You are dead wrong, old fellow. Get it out of your system, and believe me, with kind regards,

"Yours truly,

"B. R. HOWARD."

The price paid, forty-seven thousand dollars, included the personalty. There was a reduction made in the original price, but this was taken off of the personal property, the real estate being sold for thirty-five thousand, the price placed on it with the appellee.

The appellant testified that several people besides Mr. Bonsal were interested in the property, he having advertised it for sale in the papers. Mr. Bonsal had impressed him with the idea he might buy it, although he did not know anything about his financial condition. A man from Harrisburg, by the name of Strayer, was also negotiating for the place. In response to a question as to how far negotiations had gone with this man, the appellant answered: "He had been down several times and seemed very well pleased, and I was certain that he or Mr. Bonsal would get it. Mr. Bonsal said if I would wait a bit he would handle it. I liked Mr. Bonsal very much from the time I met him. I did not know Mr. Strayer, and I was altogether inclined for Mr. Bonsal to have it if he could possibly make it." He further testified that for sentimental reasons he decided not to sell,

and wired Mr. Bonsal, withdrawing the property, fearing he would hear the next day from Mr. Bonsal, accepting the terms. He decided later to sell and re-opened negotiations with Mr. Bonsal again about the middle of July, 1912, and completed the sale on the 15th of October, 1912. It was a conceded fact that between the time of withdrawal and the day of sale, the appellee did nothing towards bringing about the sale, other than what had been done by him previously.

The question of when and under what circumstances a broker is entitled to commissions for his efforts in procuring or attempting to procure purchasers for real estate has been the subject of a great deal of litigation, both in this State and elsewhere. Under the facts in this case the appellant contends that the appellee cannot recover unless there is evidence of bad faith upon the part of the appellant in withdrawing the authority to sell from the appellee, and argues there is no evidence of such lack of good faith to submit the case to the jury. The appellee argues that under the decisions of this State the question of good faith is not the test of the right of recovery, but that if the appellee was the procuring cause of the sale, that then he is entitled to recover, notwithstanding the agency had been revoked. This contention is based upon the decisions of this Court in *Keener* v. *Harrod,* 2 Md. 63; *Jones* v. *Adler,* 34 Md. 440; *Attrill* v. *Patterson,* 58 Md. 226, and *Blake* v. *Stump,* 73 Md. 160. It is argued that the principle contended for is established by the following language in the opinion of *Keener* v. *Harrod, supra,* and substantially followed in the other above cited cases and in many more which we could cite. The Court said: "We understand the rule to be this (in the absence of proof of usage), that the mere fact of the agent having introduced the purchaser to the seller or disclosed names by which they came together, to treat, will not entitle him to compensation; but if it appears that such introduction or disclosure was the foundation on which the negotiation was begun and conducted and the sale made, the parties cannot afterwards, by

agreement between themselves, withdraw the matter from
the agent's hands, so as to deprive him of his commission."
And in *Livezy* v. *Miller,* 61 Md. 336, it was said: "It is well
settled by the authorities generally, and in this State, that
a broker is entitled to his commissions if the sale affected
can be referred to his instrumentality. It is also the estab-
lished law that, after negotiations, begun through a broker's
intervention, have virtually culmulated in a sale, the agent
cannot be discharged, so as to deprive him of his commis-
sions. If the agent is the procuring cause of the sale made,
he will be awarded his commissions." The construction
sought to be put upon the language of these cases by the
appellee, completely ignores the rule of law applicable to the
right of a principal to revoke the authority of his agent. In
the case of *Attrill* v. *Patterson,* 58 Md. 250, quoted and
approved in *Smith* v. *Dare,* 89 Md. 51, it was held that "as
a general rule an agent's authority to act for his principal
is always recoverable at the will of the principal by withdraw-
ing his authority, unless the authority be coupled with an
interest, or has been conferred on the agent for a valuable
compensation moving from him to the principal;" and that
"an authority coupled with an interest" is an "interest in
the thing itself on which the authority is to be exercised, and
not an interest in that which is to be produced by the exercise
of the power." It is plain, under the decisions, that the
authority in this case was not one coupled with an interest,
nor conferred for a valuable consideration. If then the
principal has the right to revoke the agency, the correct inter-
pretation of the above cited cases establishes no more than
that where facts show a sale made by the principal to have
been the result of the agent's efforts, the agent cannot be
deprived of the commissions agreed upon if it is established
that the purpose of the principal was to avoid the payment
of the commissions by withdrawing the authority before the
sale was actually consummated. In other words, in such an
agency as here, the principal had the absolute right to with-

draw the authority before the sale was made, and if afterwards he availed himself of the efforts of the agent and made the sale to the agent's customer he is not liable to the agent for commissions unless his withdrawal was made in bad faith towards the agent. *Rees* v. *Pellow,* 97 Fed. Rep. 167; *Cadigan* v. *Crabtree,* 186 Mass. 7; *Smith* v. *Kimball,* 193 Mass. 582. Taking the facts of this case as conceded, the withdrawal of the property took place in October, 1911; negotiations were not re-opened with the purchaser until July, 1912—at least nine months afterwards. Can there be any rule which prevents a party from selling his property to one who had become interested in it by an agent whose authority had been subsequently terminated in good faith, and when under the terms of the contract the right to terminate at will existed? If such authorities exist, we have been unable to find them, but, on the contrary, all we have examined make the question of the good faith of the principal at the time of the termination of the agency, the test of the agent's right, together with the question of the procuring cause. The fact that the ultimate purchaser is the same person interested by the former agent does not affect the question of commissions, provided the withdrawal of the property by the principal from the agent's hands was not with the idea of saving the commissions for himself. If the principal was moved by such a purpose then, of course, he should not be allowed to accomplish it. We are, therefore, of the opinion that the contention of the appellant is correct, in that, there must be evidence of bad faith upon the part of the principal to entitle the appellee to recover; but we are also of the opinion that the facts in evidence were sufficient, if believed by the jury, to warrant it so finding. All other contentions made presented questions of fact for the jury and were properly left for its determination.

What we have said as to the question of good faith, will necessitate a reversal of this judgment because of error in the first prayer of the appellee. The reporter will please set out this prayer in the report.

It will be seen that this prayer is predicated upon the theory that the appellee is entitled to recover notwithstanding the appellant wrote the letter of withdrawal in good faith. After what we have already said, it is not necessary to say anything more than to add that this was erroneous. He was not entitled to recover unless the jury found in addition that the withdrawal was in bad faith. It is true that the prayers of the appellant stated this principle correctly and clearly, but we cannot hold that the effect of this wrong prayer was corrected by them. It has occasionally been held by this Court that the misleading effect of a prayer had been corrected by one of the opposite party. See *Robinson v. Silver,* 120 Md. 41, for a review of the cases. But in such a serious error, we could hardly extend the exception, for we can but think the jury could have been misled.

We are also of the opinion that the expression used in this prayer, "further find that the efforts of the plaintiff were efficient in bringing about the sale," is a too broad statement under the authorities. Some authorities use the term "procuring cause," while others use "efficient cause;" but by saying that "if the efforts were efficient in bringing about the sale" would have permitted the jury to declare the defendant liable no matter to what degree those efforts may have been efficient.

The second prayer of the appellant was properly refused and especially so for the reason that it makes the question of the good faith of the appellant refer only to the time of placing the property again on the market when it should refer in point of time to the time when it was withdrawn. The fourth prayer from its phraseology was very misleading, in that, although by the latter part, it required the jury to find the good faith of the appellant in withdrawing the property, nevertheless in the earlier part it denies the right of the appellee to recover without reference to the question of good faith. The substance of this prayer was saved to the appellant by the granting of his third and fifth prayers. We might here refer to the emphasis attempted to be placed upon the

assent of the appellee to the withdrawal, and appearing in all the prayers of the appellant. The assent, so called, as appearing in the testimony could have no effect one way or the other upon the right of the appellee to recover.

The first exception arose over asking Mr. Bonsal on cross-examination the following question: "I would ask you whether or not it is a fact you secured a reduction in the price which Mr. Howard was asking for the property on the ground that in making the sale to you without the intervention of a broker he would save broker's commissions?" Upon objection, the defendant offered to prove in response to this question, "that pending his negotiations with the defendant for the purchase of the Verdant Valley Farm, the witness asked for a reduction of the price of the same below the price demanded by the defendant, on the ground that the defendant by dealing direct with him without the intervention of a broker, would save commissions on the sale, and that the defendant, in consideration thereof, and of the assurance by the witness that plaintiff had not induced him to make the purchase, reduced the price by the sum of $1.500, and sold the property to the witness on the basis of such reduction." The fact that the appellant took the negotiations into his own hands, and changed the terms, could not affect the agent's right to commissions, provided he was the procuring cause of the sale. *Leupold* v. *Weeks,* 96 Md. 280. Neither could the belief of the seller that he was not liable for the commissions affect any issue in the case. He might well have had this belief and acting under it, made a material reduction in the price and still have been liable, if the discharge of the agent had been for the purpose, as we have above said, of relieving himself from payment of commissions.

The second exception was to the refusal of the Court to permit an answer to the following question asked on cross-examination of the same witness: "State whether or not you did not say to Mr. Howard, subsequently to your purchase of the property, that the plaintiff in no way interested or in-

fluenced you in the deal for the purchase of said property ?" We think this question was proper and should have been allowed to be answered, and there is direct authority for it in *Attrill* v. *Patterson, supra,* where this Court said : "But that could be rebutted (evidence as to whether the plaintiff was the procuring cause) as was done in *Earp* v. *Cummins,* 54 Pa. St. 396, where the purchaser (who the Court said, if anybody knew, must know) testified he was not influenced at all in making the purchase by the agent."

The third and fourth exceptions were to the refusal to permit answers to the following question put during the cross-examination of the same witness, Bonsal : "In the fall of 1911, you were not in a position to buy. When did you get in a position to buy and under what circumstances did you come to be in a position to buy ?" This witness had already testified, under cross-examination, that prior to, and at the time of the withdrawal, he was not in a financial condition to purchase the property. That this testimony was proper, no question was raised, or we take it, could be raised. One of the conditions of the right of an agent to recover commissions is that he must have found a purchaser in a situation, and ready and willing to complete the purchase. *Carrington* v. *Graves,* 121 Md. 567. This ability to purchase being one of the questions to be determined from the facts, should always be the subject of examination. It may have been a suspicious circumstance to the minds of the jurors that a person who had just testified he was unable to purchase a property in the fall of 1911, yet in the fall of 1912 had purchased the same property, together with twelve thousand dollars worth of personal property, at forty-seven thousand dollars. In our opinion, the further inquiry was proper. It is true as argued that the sale, according to the appellant was not broken off in 1911 because of financial inability of the proposed purchase, for he testified to an entirely different cause; and further, that he thought a sale was so near that he telegraphed Mr. Bonsal the withdrawal; and Mr. Bonsal testified he never disclosed to the appellant his financial inability. These were

facts, together with the later purchase, from which the jury could have reached the conclusion that the purchaser was originally capable.

The fifth exception was to the refusal to permit an answer to a question asked the appellant: "In July, 1912, when you decided that you would put the property on the market again, state to the jury whether you had any idea at that time that Mr. Street had any claim for commissions on you?" The contention of the appellant is that this was a proper question under the authority of *Phelps* v. *George's Creek, etc.*, 60 Md. 536, as bearing upon the question of the good faith of the appellant in revoking the agency and subsequently placing the property on the market again. That case is authority for the principle that where the fact to be established is the intention with which an act has been done, to which act, as a matter of law, no conclusive presumption attaches, the party whose intention is the subject of inquiry may testify to the nature of his intention as he might to any other material fact. The question here does not in our opinion come within the rule. At the time of revocation, the thought in the mind of the appellant may have been to avoid the payment of commissions, and yet at the time of re-opening negotiations with Mr. Bonsal have had no idea that the appellee could have any claim against him. The question does not go to the intention of the appellant at all, but rather to his opinion as to what rights the appellee might have had as growing out of their previous relations.

The rulings on the remaining exceptions, sixth and seventh, were not seriously pressed, but we think the rulings thereon were correct. The questions could have had no bearing upon the question of the good faith of the appellant.

> *Judgment reversed and new trial awarded,*
> *with costs to the appellant.*