JAMES PIPER, JR., ET AL. *v.* MARY VALETTE WELLS
[No. 29, October Term, 1938.]

*Decided November 4th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*W. Thomas Kemp, Jr.*, with whom were *J. Martin McDonough, Harry E. Karr*, and *Piper, Carey & Hall* on the brief, for the appellants.

*George Cochran Doub*, with whom was *James Carey, 3rd*, on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Appellants brought suit in the Superior Court of Baltimore City under the Speedy Judgment Act, (section 404 *et seq.*, Charter and P. L. L. of Baltimore City), to recover commissions allegedly due them arising out of a contract with Mary Valette Wells concerning certain premises known as No. 4 Paddington Court, Roland Park, Baltimore, Maryland. The case was tried before the court without a jury, and at the conclusion of the testimony offered by both parties, the court granted a prayer at appellee's request for a directed verdict. The appeal is from the judgment upon that verdict.

The property was first listed with appellants in July, 1936, for a definite period, at the end of which, no contract of sale having been effected, it was relisted on January 6th, 1937, the essential provisions of the second contract being as follows:

"(Note:—Only Active Members of the Real Estate Board are Realtors.)

"Standard Multiple Listing Contract
"Adopted by the Real Estate Board of Baltimore
"Baltimore, Jan. 6, 1937.

"Piper & Hill, Realtor, is hereby authorized to sell/rent my/our property described on the reverse side hereof. This authority shall continue for a minimum period of three months and not more than six months from date hereof, except that either party, by giving thirty days'

written notice, may cancel this contract at the end of said minimum period or at any time thereafter.

"If any agreement to sell/rent the said property is negotiated during the life of this contract or within six months thereafter by said Realtor, the owner, or through any other agency to anyone having made inquiry regarding said property either directly or indirectly of said owner during the life of this contract, then said owner shall pay said Realtor a commission on the amount for which said property is sold/rented in accordance with the standard rates and provisions of the By-Laws adopted by the Real Estate Board of Baltimore, except that said Realtor shall have no claim upon said owner for commission on any sale/rental made by some other Realtor after the expiration of this contract. Said Realtor shall not be responsible to care for the physical condition of the property involved under this agreement. This contract shall be void—(1) if broker is not a Realtor—(2) if this contract is not multiple listed.

"Owner Mary Valette Wells (Seal)

"Owner 4 Paddington Court (Seal)

"Owner's Address     Homeland

"Witness Edna C. Hilbert

"Witness

"Broker                          (Seal)

"Commission Rates—For selling improved city real estate, except special utility properties 5% on the first $5000 and 3% on balance. For selling unimproved City property and all suburban property, except farms and special utility properties, 5% on the sale price."

The reverse side showed the listing price of $17,500 and other information as to number of

floors, number of rooms, baths, etc., and on its face was stamped:

"Multiple Listed
"Jan. 8, 1937
"Real Estate Board of Baltimore
"Multiple Listing Bureau
"(Signed) C. Philip Pitt
"Secretary"

It was testified by appellants that the property was multiple listed, that is, the contract was filed with "The Multiple Listing Bureau," which in turn notified its various members of the listing and sent them cards containing information relative to the property. Under that system, appointments to see the property, as well as negotiations respecting its purchase, are usually carried on by member broker through the listing broker. In addition to having the property thus listed, appellants advertised it in a local newspaper. However, during the winter months, the slack season of the year for selling real estate, they had no calls for the property.

On February 28th, 1937, less than two months after execution of the contract previously quoted, appellee wrote appellants as follows: "Dear Sirs: I wish to cancel my sales contract with you on the property No. 4 Paddington Court, Homeland—as I feel that there is no sale for the house and I am returning to the house myself to live—Thank you for all your interest in this matter."

To this letter, on March 2nd, they replied:

"Dear Miss Wells: We have your letter of February 28 asking us to cancel your listing. We are very sorry that you wish to cancel at this time as the spring season is just beginning and there is every possibility that now (we) can sell your property.

"However, if you are of the same mind at the expiration of your thirty days' notice, we shall be glad to cancel this listing."

The question thus raised at the outset is whether by her letter of February 28th Miss Wells effectually revoked appellants' authority under the listing agreement.

This we conclude must be answered in the affirmative, whether tested by the rule adopted in the earlier decisions that the contract is not one coupled with an interest, or by the broader and more recent rule announced in the Restatement of the Law of Agency, sec. 138 (Comment) and sec. 372. Compare the rule last mentioned with the one referred to in *Hunt v. Rousmanier*, 8 Wheat. 174, 21 U. S. 174, 5 L. Ed. 589; *Attrill v. Patterson*, 58 Md. 226; *Gutman v. Buckler*, 69 Md. 7, 13 A. 635; *Howard v. Street*, 125 Md. 289, 93 A. 923; *Acker v. Cecil Nat. Bank*, 162 Md. 1, 157 A. 897; *Williston on Contracts* (Rev. Ed.), secs. 279, 280; *Mechen on Agency* (2nd Ed.), secs. 563-568.

But the power to revoke is not to be confused with the right to revoke, under a contract such as is before us, without incurring liability to the opposite party for its breach. 2 *C. J. S. Agency*, sec. 74(a); *Williston on Contracts*, secs. 1293, 1293A; *Mechem on Agency*, sec. 568. From the last cited authority, we quote: "Distinction may be made in these cases between the power to revoke and the right to revoke; the principal always having the power to revoke but not having the right to do so in those cases wherein he has agreed not to exercise his power during a certain period. If, in the latter case, he does exercise his power he must respond in damages."

It is insisted that the listing contract was without consideration, because by its terms appellants were not bound even to use their best efforts to effect a sale of the property, but a sufficient answer to this contention is found in the fact that they received no remuneration whatsoever until they produced a prospect able, ready and willing, either to enter into an enforceable agreement for the purchase of the property or actually purchase it. Moreover, the argument that no consideration existed for the contract loses its force when the contract is considered, for it could not be seriously contended that, in legal contemplation, a benefit did not accrue to Miss Wells with a corresponding detriment to appellants. *Brantly on Con-*

*tracts* (2nd Ed.), sec. 27; *Anson on Contracts* (Amer. Ed.), secs. 118-125.

Stated briefly, appellants' proof was susceptible of a finding that, after receipt of the listing contract, their efforts, which were carried on through a Mrs. Hilbert of their office, to interest prospects in the property, were fruitless until early in the month of March when an outside broker, C. Preston Scheffenacker, because of its multiple listing, learned it was for sale and made appointments with appellants to show the property to prospective purchasers, with the result that his efforts, of which Mrs. Hilbert was kept informed, culminated on March 19th in having Robert T. Settle and H. G. Settle execute a contract for its sale at the listed price of $17,500, one of the Settles giving his check payable to Miss Wells for $1,000 upon the purchase price, it being specified in the contract of sale that the balance was to be paid in cash within sixty days; that the Settles were financially able, ready and willing to carry out the contract, and indeed no contrary contention is made. However, after the agreement was executed by the Settles, and this with the check was taken by Mrs. Hilbert to Miss Wells for execution, the latter refused to consider it, and stated she was not going to sell. It is conceded that no commissions have been paid to any one. There was likewise evidence to show that, during the negotiations with the Settles, Miss Wells was in touch with the situation, and by her conversation gave Scheffenacker to understand the property was still for sale at the listing price.

This brings us to a consideration of the prayers. As previously observed, the suit was not for breach of the contract, but for commissions under a supposedly subsisting contract. Appellants offered two prayers upon this theory and these were rejected by the trial court. While the prayers were not inconsistent with the form of action, the form of action was improper in view of the facts heretofore referred to, and, this being true, no error is found on the part of the trial court in the rejection of the

two prayers offered by appellants, who, being without authority after February 28th, to sell the property of Miss Wells, were without power to enter into an agreement with the Settles, because of the revoked authority, which could bind her without her consent to pay them commissions.

Appellee's A prayer was a demurrer to the evidence, but since no reference was made therein to the pleadings, it was properly refused, since in such a case appellant's right to recover was determinable upon the proof, and it cannot be said that there was an absence of evidence entitling plaintiff to recover in some form of action. *Rosenkovitz v. United Railways Co.*, 108 Md. 306, 70 A. 108; *Atlas Realty Co. v. Galt*, 153 Md. 586, 139 A. 285; *Pugaczewska v. Maszke*, 163 Md. 355, 163 A. 205.

By her B prayer, which was granted, the court was asked to rule as a matter of law that in view of the fact that under the pleadings the suit was not one for damages for breach of contract, but a suit for the payment of a liquidated sum due and owing the plaintiffs, there was no legally sufficient evidence to entitle them to recover under the pleadings, and the verdict of the court, sitting as a jury, must be for the defendant. Notwithstanding appellant's insistence to the contrary, we feel that this instruction sufficiently called to the attention of the trial judge the fact that the suit was not for breach of an express contract, but one for the payment of commissions under a contract which was not in force when the right to receive commissions allegedly accrued. The instruction was, therefore, under chapter 110 of the Acts of 1914 (section 11, article 5, of the Code) sufficient as a variance prayer, and the action of the trial court was correct in granting it. *Western Union Tel. Co. v. Bloede,* 127 Md. 344, 352, 96 A. 685, 688; *Victory Sparkler Co. v. Francks,* 147 Md. 368, 372, 128 A. 635, 636.

In view of this holding with reference to appellee's B prayer, it becomes unnecessary to consider the remaining instructions.

*Judgment affirmed, with costs.*