PARTELLO INVESTMENT CORPORATION *v.*
HAGAN REALTY COMPANY, ᴇᴛ ᴀʟ.

[No. 163, September Term, 1966.]

*Decided March 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*William V. Meyers,* with whom was *Leo Wm. Dunn, Jr.,* on the brief, for appellant.

*Joseph A. DePaul,* with whom was *William H. Clarke* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

Harold W. Jaseph owns the corporate appellee. Mrs. Ellen O'Meara is one of his employees. In this disquisition both Jaseph and the corporation will be known as Jaseph. The appellant is owned by James Partello whose surname will be used to designate both him and his corporation.

Early in 1962 Partello bought a tract of land in Prince George's County which he subdivided and dubbed Holmehurst. By the spring of 1963 he had completed five houses and more were under construction. Jaseph, who had sold the land to Partello, was employed to sell the houses. He was given an exclusive listing and he was to receive a commission of $3\frac{1}{4}$ percent on all sales. Mrs. O'Meara "was a saleslady sitting on the project at Holmehurst on weekends and during the week one night." She thought a friend (Thomas E. Burke), who owned a retail liquor store in Kentland, might be interested in buying one of the houses in Holmehurst. She persuaded him to come out and take a look. He did so on 9 August. Mrs. O'Meara said "he seemed to show some interest" and that "he would be interested" if she "could sell his house" in Cheverly. Burke testified he was not "in a position to purchase the house" unless he "disposed of the other house." In the cross-examination of Mrs. O'Meara the question and answer quoted below appear:

> "Q. So in reality they [Burke and wife] were not ready, willing and able to buy on or about the 9th day of August 1963, were they, Mrs. O'Meara.
> "A. No sir. I feel that they were very interested in buying."

16

On Monday, 19 August 1963, Partello terminated the arrangement with Jaseph. It seems no sales had been made by Jaseph and Partello was "desperate." On 21 August Partello sent Jaseph the following letter:

"Relative to the termination of your association as Real Estate Agents representing my firm at Holmehurst Subdivision, as of 8-19-63 I should appreciate your sending me a registered list of what you consider bonafide clients, showing names, phone numbers and addresses. We will honor this list for a period of two weeks from 8-22-63 until 9-5-63 to the following extent. During this period you may sell them yourself at a 3¼% commission or if we should close the deal I will reimburse you $300.00. I must have this list by 8-24-63. You understand that this is done strictly as a courtesy on our part and is not an obligation. Thank you for your efforts and I'm sorry you took this so personally. However, business is business and I have to take some drastic steps to insure the success of Holmehurst."

On 23 August Jaseph replied. Relevant parts of his letter follow:

"Receipt is hereby acknowledged of your letter dated August 21, 1963 terminating the services of Hagan Realty Company, Incorporated, as exclusive agents for the sales at Holmehurst, termination effective August 19, 1963.

"Respectfully submitted herewith is list of names [494] of prospects with whom we have been working at the project through termination date.

* * *

"* * * After careful consideration and consultation with counsel I do hereby reject the terms proposed by you and further advise you that if any client on the enclosed list is sold a house at Holmehurst by you * * * at any price, at any time from the termina-

tion date to any future period, I will take any necessary legal action * * *.

* * *

"In conclusion I wish to extend my sincere wishes for success at Holmehurst, as I believe that irrespective of your unorthodox procedures the project will culminate into a real success. * * *."

Partello's reply dated 29 August 1963, in part, follows:

"Actually, the list you submitted is valueless anyhow since I told you it would have to contain full names, addresses, and telephone numbers. The way it was compiled meant nothing and could have come from most anywhere. It is small wonder that out of approximately 500 names you didn't have any results if that's all the information you had on these people.

* * *

"My original premise that you have no claim to commissions on future sales still stands and if you feel otherwise, the burden of proof is on you."

During the second week in September Burke again visited Holmehurst and, for the first time, met Partello. On the list of 494 names sent to Partello by Jaseph was "Mr. and Mrs. Tommy Burke." Partello testified, however, that he had "never heard of" Burke before they met in September. He said, also, that Burke disclosed nothing of his earlier conversations with Mrs. O'Meara. On 21 September Burke and Partello entered into a contract for the sale of a house then under construction. Partello took a deed for Burke's house in Cheverly and gave him a credit of $22,000 on the price of the new house. Made a part of the contract was a list of 16 items which Burke insisted be installed in the house.

Jaseph and Mrs. O'Meara sued Partello in July 1965. The case came on for trial before Bowen, J. and a jury on 8 February 1966. At the conclusion of the evidence offered by Jaseph, and again at the conclusion of all of the evidence, the trial judge denied Partello's motion for a directed verdict. Partello contends the court was wrong in both instances. The court then

instructed the jury that "the real issue is * * * whether or not the plaintiff [Jaseph] * * * was the procuring cause of the sale made * * * to Burke." Partello, he went on to say, had "an absolute right to discontinue the agent's services at any time * * * and that absent some chicanery or bad faith—and there is no evidence or indication of any of that in this case— the plaintiff is entitled to recover if you find that he was the procuring cause of the sale." After counsel had been given an opportunity to except to the court's charge, the trial judge said "the court declines to instruct the jury that in order to be the procuring cause the broker must have a purchaser ready, willing and able to buy prior to the time his agency is revoked. We give you an exception to our failure to do so." Partello contends the court's instruction also was erroneous.

In our judgment *Hill v. Iglehart,* 145 Md. 537, 125 Atl. 843 (1924) is controlling. Judge Offutt, who wrote the Court's opinion, said:

> "The general rule is that the principal may at any time, before the broker finds a purchaser ready, able and willing to buy the property upon terms satisfactory to the principal, revoke the agency, 9 *C.J.* 563, and that where such revocation is untainted by fraud or bad faith, the broker will not be entitled to commissions even though the principal after the revocation sells the property to a purchaser with whom the broker had been negotiating, and notwithstanding that the broker's efforts may have been the direct and procuring cause of such sale. *Howard v. Street,* 125 Md. 302; *Attrill v. Patterson,* 58 Md. 226; *Beale v. Creswell,* 3 Md. 201." *Id.* at 550-51.

See also *Leimbach v. Nicholson,* 219 Md. 440, 448, 149 A. 2d 411 (1959) ; *Steele v. Seth,* 211 Md. 323, 127 A. 2d 388 (1956).

While we agree that the trial judge's rulings on Partello's motions for a directed verdict, in the light of the evidence produced before him, were not erroneous, we cannot agree that his charge to the jury was free from error. Partello was entitled to have the jury consider the evidence against the background of the rule announced in *Hill v. Iglehart, supra.* We think there

was evidence from which a jury could find that Burke, on 9 August 1963, was not ready, able and willing to buy the property and that Partello's revocation of the agency was untainted by fraud or bad faith.

*Judgment reversed.*
*Remanded for a new trial.*
*Appellees to pay the costs.*