## M. L. DAWSON LEE, JR. *v.* LAURA L. O'BRIEN ET AL.

[No. 441, September Term, 1973.]

*Decided May 17, 1974.*

166

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*George D. Solter* for appellant.

*Richard B. Talkin* for appellee Urban Systems Development Corporation and *Eben F. Perkins* and *Clarke Murphy, Jr.,* for other appellees.

POWERS, J., delivered the opinion of the Court.

The death on 16 February 1969 of Letitia N. Lee terminated her rights as beneficiary in a farm of some 193 acres in Howard County conveyed in trust by her mother in

1914. Upon Mrs. Lee's death it became the duty of Mercantile-Safe Deposit & Trust Company, the trustee, to have the property appraised by two or more disinterested and qualified persons, and to offer it at private sale, at 90% of the appraised value, to each of Mrs. Lee's children, one by one, in the order of their age.

The four surviving children of Mrs. Lee were three daughters — Hannah Lee Sharp, Laura L. O'Brien, and Neville Lee Worthington, and one son — M. L. Dawson Lee, Jr. After the trustee made the offer to Mrs. Sharp, all four children joined in requesting the trustee to convey the property to all of them as tenants in common, each to own an undivided one fourth interest. The trustee concluded that such a conveyance would be a proper exercise of its trust responsibilities, and agreed to the request.

Simultaneously with the conveyance, the four children entered into an agreement, dated 9 July 1969, to which the trust company was also a party. The agreement was recorded with the deed among the Land Records of Howard County. Subsections 6 (b) and 6 (c) are as follows:

> "(b) That by this agreement said parties and their respective spouses do hereby constitute, nominate and appoint Hannah Lee Sharp of Montgomery County, Maryland (one of the parties hereto) to be their true, sufficient, and lawful attorney, for them and in their name, place and stead, to grant and convey the property described in said deed of May 18, 1914, as a whole or in parcels, from time to time; and she shall have the sole right and authority to determine, when to sell and convey, to whom to sell and convey and at what price and upon what terms to sell and convey. Such sale or sales may be to such person or persons or to any body corporate, its successors and assigns as she shall determine.
>
> (c) That in the event the said Hannah Lee Sharp shall die before having disposed of all of said property in accordance with the power and

> authority hereby conferred upon her, the parties hereto do hereby constitute, nominate and appoint Laura L. O'Brien, of Baltimore County, State of Maryland, one of the parties hereto, to be their true, sufficient and lawful attorney to act for them, in the place and stead of the said Hannah Lee Sharp then deceased, with the same powers, duties and authority as herein conferred upon the said Hannah Lee Sharp."

The agreement provided that all expenses in connection with the transfer of title and expenses accruing on the property as a whole, such as taxes and insurance, would be borne equally by the four children, and that they would participate equally in the net proceeds derived from any sale or sales of the property. Two other provisions of the agreement are pertinent to this case. One recited that for some years Neville, a widow, had been occupying and using a portion of the property, and Dawson had been occupying the main dwelling and using most of the remaining part of the property, and that all desired that arrangement to continue, without the payment of rent. The other concerned the interest of Neville, and provided that if the property had not been sold within one year, or was not then under a binding contract of sale, she would have the right to require the other three children, or those then living, to purchase her share for not less than $125,000.00.

The agreement further provided as to the four children:

> " * * * that as among themselves the conditions, restrictions, and limitations of this agreement, except to the extent that they are specifically embodied in the deed executed by the Fifth Party, shall survive such deed and be enforceable as among themselves thereafter notwithstanding the execution and recording of such deed."

By a subsequent agreement of all of the children, Neville's right to require the others to purchase her share was extended for one year, to 9 July 1971. When the extended period expired, and the property had not been sold, Neville

exercised her right to call upon the others to buy her share, as provided by the agreement. Negotiations among counsel for the several parties followed, and continued over a period of several months. Hannah died in December, 1971. Her personal representatives and heirs said that they were unable to participate in purchasing Neville's share. In March, 1972, Neville filed a suit to have the property sold in lieu of partition. This suit was settled by an agreement under which Laura and Dawson each paid $62,500.00 to Neville and each received an additional one eighth interest in the property. Hannah's estate did not participate.

The succeeding events, as stated in appellant's brief and agreed to by appellees as reasonably accurate and correct, were:

"Later in June 1972, after the settlement with Neville, Perkins [Eben F. Perkins, counsel for Laura and for Hannah's estate, of which he was a co-personal representative with Hannah's surviving husband, George T. Sharp] forwarded to Dawson's counsel a firm contract for the purchase of the property by Urban Systems Development Corporation (USDC), which was prepared for the signatures of Dawson, Laura, Neville, George T. Sharp and the Sharp Estate as the sellers. At this time Perkins requested that Dawson indicate, among other things, whether or not the price (approximately $550,000) was acceptable. On July 13, 1972, Dawson's counsel informed Perkins that the offer was not acceptable to Dawson, and Perkins asked what counter-offer Dawson would make and consider to be an acceptable price. Dawson's counsel informed Perkins that Dawson was not desirous of making or suggesting any counter-offer, as the price was not 'in the ballpark'.

"By letter dated August 15, 1972, Perkins presented to Dawson's counsel a revised agreement of sale with USDC still listing Dawson individually as one of the sellers, but deleting Neville, (since she no longer had an interest in the property), with the

same purchase price as the initial agreement. On August 24, 1972, Dawson's counsel informed Perkins that since [the] purchase price had not changed, the offer was still unacceptable. During this conversation, Perkins made no mention of the existence of a third purported agreement of sale dated August 23, 1972. With a letter dated August 25, a copy of this Agreement was received from Perkins by Dawson's counsel by mail on August 28, 1972, which was the first knowledge of said agreement by Dawson or his counsel. This Agreement was signed by Laura individually and as attorney in fact for Dawson, by George T. Sharp individually and as Personal Representative of the Estate of Hannah. The purchase price was still the same as that set forth in the preceding proposed agreements. On August 28th, counsel for Dawson notified Perkins as counsel for all other parties 'seller' that Dawson did not believe that the agreement of August 23, 1972 was binding upon him and that he intended to file an appropriate action to determine the rights of the parties promptly. Shortly thereafter these proceedings were instituted."

The proceeding instituted was a bill of complaint for a declaratory decree, filed on 15 September 1972 in the Circuit Court for Howard County. M. L. Dawson Lee, Jr. was the sole plaintiff. Defendants were Laura L. O'Brien, George T. Sharp, individually and as personal representative of the estate of Hannah Lee Sharp, Eben F. Perkins, as personal representative of the estate, Urban Systems Development Corporation, as contract purchaser of the property, and George T. Sharp, III, Letitia Sharp Jacobson, and Hannah Sharp Gray, children of Hannah Lee Sharp and remaindermen under her will after a life estate in their father, George T. Sharp.

In his complaint Dawson prayed that the court declare whether the designation of Laura as attorney-in-fact was terminated prior to the contract with Urban Systems and

whether her execution of it was in derogation of his rights; that Laura be enjoined from acting further as attorney-in-fact and Urban Systems be enjoined from acting in any manner in respect to its purported interest under the contract; and for general relief.

After answers by all defendants, and some discovery proceedings, Dawson, on 15 February 1973, filed a motion for summary judgment. The motion was accompanied by a memorandum of facts admitted by the pleadings, and by an affidavit attaching copies of several letters sent or received by Dawson's counsel.

Urban Systems responded to the motion by saying that it had exercised a right it had under the purchase contract to terminate it, that it had no further interest in the issues involved, and that as to it the case was moot. In addition, Urban Systems, in an unsworn pleading, controverted some of the facts and issues asserted in Dawson's motion. There is an indication in the pleadings filed by Urban Systems that it considered them as including a motion for summary judgment in its favor, but whether or not it made a cross-motion is immaterial. Maryland Rule 610 d 1. includes a provision that in ruling on a motion for summary judgment the court may render judgment for the opposing party even though he has not filed a cross-motion.

All other defendants joined in a cross-motion for summary judgment in their favor. With it were filed an affidavit attaching various documents and correspondence, and a memorandum of facts admitted, or introduced by their affidavit. They also filed a separate answer to Dawson's motion.

A hearing on all motions for summary judgment, including a verbal cross-motion by Urban Systems, was held on 24 April 1973. On 23 July 1973 the chancellor filed an opinion and decree, noting that the case was moot as to Urban Systems, and declaring

" * * * that the agreement of July 9, 1969 is a valid subsisting agreement and now in full force and effect and binding upon the Plaintiff * * * "

The decree denied plaintiff's motion for summary judgment, and granted the defendants' cross-motion for summary judgment.

The appeal before us was taken from that decree. In his brief appellant presents these questions:

> 1. Was the power of attorney granted in the Agreement of July 9, 1969 revocable by Appellant?
>
> 2. Has the Agreement of July 9, 1969 terminated, thus terminating the designation of Appellee, Laura L. O'Brien, as attorney in fact?

Appellant makes no argument here as to Urban Systems, nor do the other appellees. Urban Systems filed a brief here, taking the position that the lower court dismissed the case as to it as moot, and that we should dismiss the appeal for the same reason. Whether the lower court dismissed the case as to Urban Systems, or entered judgment in its favor is not entirely clear, but in either event the appeal from the decree brought up for review whatever the court did below. Its action in disposing of the case favorably to Urban Systems was correct, and we shall affirm that part of the decree.

However, we conclude that the court erred in holding that Dawson did not have the power to terminate or revoke Laura's agency, and we shall reverse that part of the decree.

The agreement which created the agency or power of attorney in Hannah, and upon her death, in Laura, was silent both as to expiration and as to revocation. Therefore it continued in effect among the parties[1] until lawfully terminated by breach, by action of a party, by agreement of the parties, by operation of law, or by accomplishment of its purpose.

Dawson argues that the power was terminated by a breach of the agreement which occurred when Hannah and thereafter her successors in title failed to participate in the purchase of Neville's share. The argument does not appear

---

1. We do not consider the effect as to third parties of the recording of the agreement containing the power of attorney, under what is now Code, Art. 21, § 4-107.

to be impressive, and while we do not reject it, our decision is based on Dawson's subsequent revocation of Laura's power to act for him under the authority given in the agreement of 9 July 1969.

In *Attrill v. Patterson*, 58 Md. 226 (1882), Attrill owned a majority stock interest in a corporation chartered in Louisiana to furnish gas service in New Orleans. Its franchise claims conflicted with those of the New Orleans Gas Light Company. Attrill asked Patterson to go to New Orleans to negotiate a compromise with the other company. He said, "if there is a good negotiation effected, you shall have * * * $50,000.00." Patterson negotiated for a period of three to four months, but failed to effect a compromise. Attrill terminated Patterson's services, engaged counsel, and filed suit. Attrill's company prevailed in its franchise claims, after which Attrill and others, without any participation by Patterson, dictated the terms of a merger of the two companies.

Patterson sued Attrill for $50,000.00 plus interest, claiming that Attrill could not discharge him without paying him. The court said, at 250:

"It may be laid down, as a general rule, that an agent's authority to act for a principal, is always revocable at the will of the principal; and may at any time be put an end to by withdrawing the authority; unless the authority be coupled with an interest; or has been conferred on the agent for a valuable compensation moving from him to the principal. 1 Parsons on Contracts, 69; Wharton on Agency, 95, and notes; Story on Agency, secs. 463, 464; *Hunt v. Rousmanier*, 8 Wheat. 174; *Simpson v. Lamb*, 84 E. C. L. 603; *Blackstone v. Buttermore*, 53 Pa. St. 266; *Hartley's Appeal*, Ib. 212; *Creager v. Link*, 7 Md. 259.

"What constitutes an authority coupled with an interest, the decisions without exception, are agreed about. In *Hunt v. Rousmanier*, already cited, Chief Justice Marshall says, it 'is an interest in the thing itself on which the power is to be exercised, and not

an interest in that which is to be produced by the exercise of the power.' In *Blackstone v. Buttermore*, 53 Pa. St. 266, the same rule is laid down in almost the same terms, and that is now the doctrine of all the text books."

In *Smith v. Dare*, 89 Md. 47, 42 A. 909 (1899), the owners of a farm appointed Smith as agent to attend the farm, collect rents when due, and refund same to the owners, after deducting such money as is necessary for the benefit of the farm, but "not to advance any rents before due, except when absolutely convenient * * *." Smith advanced the owners more than the net rents he collected from the tenant. The owners revoked the power of attorney, and conveyed the farm to another, in trust. Smith filed suit for the appointment of a receiver to collect the rents, and apply them on account of the sums he had advanced. In discussing the nature of Smith's agency the Court of Appeals said, at 51-52:

"There is no implication to be found anywhere in the contract that his authority, or any part of it, was conferred upon him as a security for indebtedness due to him or thereafter to become due him from the Dares, or that he paid anything for his agency or for any of the powers that were conferred on him. This case, therefore, falls within the principles laid down in *Hunt v. Rousmanier*, 8 Wheaton, 174, and in *Attrill v. Patterson*, 58 Md. 250. In these cases it was held that 'as a general rule an agent's authority to act for his principal is always revocable at the will of the principal by withdrawing his authority, unless the authority be coupled with an interest, or has been conferred on the agent for a valuable compensation moving from him to the principal;' and that 'an authority coupled with an interest' is an 'interest in the thing itself on which the authority is to be exercised and not an interest in that which is to be produced by the exercise of the power.' "

In *Howard v. Street,* 125 Md. 289, 93 A. 923 (1915), the Court of Appeals reaffirmed the law as stated in *Attrill v. Patterson, supra,* and *Smith v. Dare, supra.* In *Piper v. Wells,* 175 Md. 326, 2 A. 2d 28 (1938), dealing with a real estate brokerage contract, clearly not coupled with an interest, the Court of Appeals recognized the *power* of a principal to revoke an agency, though not necessarily the *right* to do so without incurring liability.

*Creager v. Link,* 7 Md. 259 (1854) and *Acker v. National Bank,* 162 Md. 1, 157 A. 899 (1932) each involved an agency held to be irrevocable, but neither is apposite to the facts involved in the present case.

In *Gutman v. Buckler,* 69 Md. 7, 13 A. 635 (1888) and *Literski v. Literski,* 166 Md. 641, 171 A. 874 (1934) the Court of Appeals discussed a power coupled with an interest, but in each case the power was one of disposition of real estate, not involving a relationship of principal and agent.

In Mechem's *Law of Agency,* Second ed. § 570, the author describes two kinds of interests which may be coupled with an agency to make it irrevocable. One is,

> "An interest, not amounting to a property or estate in the thing itself, but still an interest in the existence of the power or authority to act with reference to it, not for the purpose of earning a commission by the exercise of the power, but because the agent has parted with value, or incurred liability, or assumed obligations, at the principal's request or with his consent, looking to the exercise of the power as the means of reimbursement, indemnity or protection."

The other is,

> "An interest or estate in the thing itself, concerning which the power is to be exercised, arising from an assignment, pledge or lien created by the principal, coupled with which is the power to deal with the thing itself in order to make the assignment, pledge or lien effectual."

The author goes on to say, in § 571,

> "The[y] differ from each other only in the fact that, in the latter, the agent has an estate or interest in the subject matter of the power, while in the former his interest is rather in his right to exercise the power over the thing, in order to make it available for the security or protection contemplated."

In the facts of the case under consideration, each of the four children of Letitia N. Lee became the owner of an undivided one fourth interest in the property. The power given in the agreement of 9 July 1969 to Hannah, and later to Laura, neither enhanced nor diminished the share of the agent, or of any principal. As far as Dawson was concerned, the subject matter of the power he granted to the agent was his one fourth share in the property. The agent received no interest in that subject matter. There was no valuable compensation moving from the agent to Dawson in return for which the power was conferred on the agent. There was no liability incurred, or obligation assumed by the agent which required the security of the power as a means of reimbursement, indemnity, or protection.

In short, the agreement among the four children surely created an agency, but not an agency coupled with an interest, nor one given for valuable compensation moving from the agent to the principal, nor one given to secure to the agent reimbursement for liabilities incurred or obligations assumed. The agency was not irrevocable.

Restatement of Agency 2d says, in § 118:

> "Authority terminates if the principal or the agent manifests to the other dissent to its continuance."

Comment b under § 118 says:

> "The principal has power to revoke and the agent has power to renounce, although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable."

We hold that as between Dawson as the principal and Laura as the agent, Dawson revoked Laura's authority when he rejected the first contract she submitted. That rejection clearly manifested to Laura his dissent to the continuance of her sole right and authority to determine at what price and upon what terms to sell and convey Dawson's property. The filing of this suit by Dawson, asking that Laura be enjoined from acting further as his attorney in fact is, to say the least, another manifestation that he dissented to the continuance of her authority.

The case was submitted to the court on motion and cross-motions for summary judgment. There was no material dispute of fact. The question to be resolved was one of law. In our view of the law, Dawson had revoked Laura's authority to sell his share of the property, and the court erred in holding to the contrary.

> *Decree affirmed insofar as it dismissed the complaint against, or entered judgment for appellee Urban Systems Development Corporation, with the cost of its brief to be paid by appellant.*
>
> *Decree reversed as to the other appellees, and remanded for passage of a decree in accordance with this opinion.*
>
> *Appellees, other than Urban Systems Development Corporation, to pay their own costs and appellant's costs.*